No. 01-673

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 295

RICHARD WIARD,

       Petitioner and Appellant.

   v.

LIBERTY NORTHWEST INSURANCE CORP.,

       Respondent/Insurer and Respondent,

    for

DAW FOREST PRODUCTS,

       Employer.

APPEAL FROM:    The Workers' Compensation Court, Cause No. 2001-0295,
                Honorable Mike McCarter, Judge Presiding

COUNSEL OF RECORD:

       For Appellant:

       Eric Rasmusson, Bulman Law Associates, P.L.L.C., Missoula, Montana

       For Respondent:

       Larry W. Jones, Senior Attorney, Liberty Northwest Insurance
       Corp., Missoula, Montana

                Submitted on Briefs:  March 14, 2002

                         Decided:  October 30, 2003

Filed:

               _____
                            Clerk

Justice Jim Rice dlivered the Opinion of the Court.

¶1     Richard Wiard (Wiard) appeals the Montana Workers' Compensation Court's holding that medical benefits resulting from Wiard's 1992 work-related neck injury terminated after his employer's insurer, Liberty Northwest Insurance Corporation (Liberty), paid no medical claims resulting from this injury for 60 months, pursuant to § 39-71-704(1)(d), MCA (1991). We affirm.

¶2     Wiard raises the following issues on appeal:

¶3     1.   Whether the Workers' Compensation Court erred in its interpretation of the medical benefit provision within the Petition for Compromise and Release Settlement.

¶4     2.   Whether Wiard was denied medical benefits without due process of law.

¶5     3.   Whether Liberty should be equitably estopped from asserting § 39-71-704(1)(d), MCA (1991), as a defense.

¶6     4.   Whether Liberty violated the implied covenant of good faith and fair dealing and the Unfair Trade Practices Act.

¶7     5.   Whether the Workers' Compensation Court erred by finding that a prior determination of Wiard's maximum medical improvement precluded further medical benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     Upon stretching in bed on the morning of August 5, 1992, Wiard experienced intense neck pain that radiated down his arm to the index and long fingers of his right hand.   Dr. Richard C. Dewey diagnosed a herniated cervical disc between C6-C7, which was attributed

2

to the repeated jostling and jarring Wiard endured as a crane operator for DAW Forest Products in Superior, Mineral County, Montana. Wiard underwent a partial discectomy in early 1993. According to Dr. Dewey, Wiard suffered a 10 percent impairment of the whole man as a result of the industrial injury. Within a few months, Wiard resumed work as a heavy equipment operator.

¶9 Liberty provided workers' compensation insurance for Wiard's employer. Acting *pro se*, Wiard entered into negotiations with Liberty to settle his claim. The parties executed a Petition for Compromise and Release Settlement (agreement) on February 24, 1994, in which the insurer accepted liability for Wiard's neck injury. The Montana Department of Labor and Industry (DOLI) approved the agreement by written order. According to the agreement, the insurer compensated Wiard for lost wages in the amount of $5,085.60; paid Wiard's medical costs of $6,647.64; and proffered permanent partial disability payments totaling $8,550.05. Wiard's future medical and hospital benefits were expressly reserved by the agreement.

¶10 On April 25, 1995, Wiard returned to Dr. Dewey with intrascapular pain and tingling in his right arm, which Wiard associated with his attempt to grab at a falling cabinet five to six weeks earlier while he was assembling cabinets for another employer. Liberty denied the claim for Wiard's office visit based upon Dr. Dewey's conclusion that Wiard's recent neck and right arm pain was caused by a new injury, for which Liberty was not the insurer. Wiard disagreed that he had sustained a new injury but did not contest Liberty's denial. He

3

received no further treatment as a result of the 1995 incident. Wiard did not seek medical care with respect to his neck again until September 2000.

¶11 After experiencing discomfort for about two weeks, Wiard awoke early in the morning of September 5, 2000, unable to move his head. Acute pain radiated down his right arm and numbed his right fingers. Attributing these problems to Wiard's original 1992 injury and subsequent neurosurgical decompression, Dr. Carter E. Beck performed a complete anterior discectomy and fusion at C6-C7. The surgical procedure and treatment by other health care providers generated approximately $25,000 in medical expenses. Liberty refused to pay Wiard's surgery-related costs because Wiard had not submitted any medical claims for a 60-month period, pursuant to the limitations set forth in § 39-71-704(1)(d), MCA (1991).

¶12 Wiard sought redress in the Workers' Compensation Court. In addition to the 60-month argument, Liberty also asserted a factual defense that Wiard's surgery was necessitated by an injury he had sustained two weeks prior to September 5, 2000, but that issue was not reached. On cross-motions for partial summary judgment, the court granted Liberty's motion on June 8, 2001, and denied Wiard's motion to reconsider on July 20, 2001, concluding that because Wiard had not filed any claims for medical benefits related to his 1992 work-related injury for a period exceeding 60 consecutive months, the statutory limitation relieved Liberty of liability for Wiard's surgery-related expenses incurred in September 2000. After being advised by the parties that the partial summary judgment had disposed of all issues, the Workers' Compensation Court entered a final judgment and dismissed Wiard's petition with prejudice. Wiard appeals. For purposes of this appeal, the

4

parties do not dispute Wiard's assertion that he required surgery in September 2000 as a result of his 1992 work-related injury.

## STANDARD OF REVIEW

¶13 We review a grant of summary judgment *de novo. Dyess v. Meagher County*, 2003 MT 78, ¶ 7, 315 Mont. 35, ¶ 7, 67 P.3d 281, ¶ 7 (citing *Grenz v. Fire & Cas. of Conn.,* 2001 MT 8, ¶ 10, 304 Mont. 83, ¶ 10, 18 P.3d 994, ¶ 10). We review a trial court's conclusions of law to determine whether those conclusions are correct. *Dyess,* ¶ 7.

## DISCUSSION

### Issue 1

¶14 *Whether the Workers' Compensation Court erred in its interpretation of the medical benefit provision of the Petition for Compromise and Release Settlement.*

¶15 The Workers' Compensation Court concluded that, although Wiard's 1994 agreement with Liberty reserved future medical benefits, that provision was subject to the limitations set forth by the Workers' Compensation Act (the Act), including § 39-71-704(1)(d), MCA (1991), which states, in pertinent part:

> Except for the repair or replacement of a prosthesis furnished as a result of an industrial injury, *the benefits provided for in this section terminate when they are not used for a period of 60 consecutive months*. [Emphasis added.]

¶16 The agreement between Wiard and Liberty was memorialized by use of Form 820, a standardized "Petition for Compromise and Release Settlement" produced by the DOLI. The agreement was signed by the parties on February 24, 1994, and states, in pertinent part:

> The undersigned claimant was accidentally injured on August 5th, 1992, while employed by DAW Forest Products, an employer enrolled under

5

Compensation Plan No. II of the Montana Workers' Compensation Act. The insurer assumed liability for the injury and paid compensation and medical benefits to the claimant.

. . . .

The parties to this matter have agreed to fully and finally conclude all compensation and/or rehabilitation payments due the claimant under the Workers' Compensation Act, wherein the insurer shall pay to the claimant the sum of Eight Thousand Five Hundred Fifty and 05/100 Dollars ($8,550.05). Unless otherwise indicated in this petition, the settlement amount shall be paid in a lump sum and paid in addition to all sums previously paid by the insurer.* *Further medical and hospital benefits are hereby expressly reserved by the claimant.*

. . . .

*Special Provisions: Insurer is entitled to a credit for all permanent partial disability benefits paid prior to final approval. All rehabilitation benefits are expressly closed. [Emphasis added.]

¶17 Wiard points out that while the agreement expressly limits compensation and rehabilitation benefits to the lump sum payment, the agreement also expressly reserves medical benefits related to his 1992 industrial injury without restriction. Citing *South v. Transportation Ins. Co.* (1996), 275 Mont. 397, 401, 913 P.3d 233, 235, as authority for the precept that workers' compensation settlement agreements are contracts that are subject to contract law, Wiard argues that basic principles of contract law require Liberty to honor his September 2000 medical claim based on the clear intention of the parties at the time of contract formation and the unambiguous language of the agreement. Wiard contends that the agreement neither incorporates the Workers' Compensation Act generally, nor specifically references the 60-month limitation set forth in § 39-71-704(1)(d), MCA (1991).

6

¶18 Wiard also maintains that, as an unsophisticated party to the settlement agreement with Liberty, he possessed unequal bargaining power and urges this Court to interpret the plain language of the agreement in his favor. Wiard notes that Liberty was in the business of providing workers' compensation insurance in Montana, but he was a crane operator who knew little about workers' compensation or contract law. At the time the agreement was signed, the stated public policy of the Workers' Compensation Act was to eliminate attorneys from proceedings. Unrepresented by counsel in negotiations with Liberty, Wiard asserts that he nonetheless bargained for future medical benefits that were not limited in duration.

¶19 Liberty responds that the provisions of the Workers' Compensation Act are an integral part of its agreement to pay future medical benefits to Wiard. Arguing that the agreement was created under the authority of the Act, Liberty asserts that lack of explicit reference to § 39-71-704(1)(d), MCA (1991), does not manifest an intent on the part of the insurer to extend medical benefits to Wiard that exceed the entitlement established by the Legislature under the Act.

¶20 It is well established that laws existing at the time a contract is formed become part of the contract. *Earls v. Chase Bank of Texas, N.A.,* 2002 MT 249, ¶ 12, 312 Mont. 147, ¶ 12, 59 P.3d 364, ¶ 12. We first articulated this principle in *Snider v. Yarbrough* (1911), 43 Mont. 203, 207, 115 P. 411, 413, stating that "parties will be presumed to have contracted with reference to the law in force." We have since noted that "'[t]he laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its term.'" *City*

7

*of Philipsburg v. Porter* (1948), 121 Mont. 188, 193, 190 P.2d 676, 678 (quoting *United States ex rel. Von Hoffman v. Quincy* (1866), 71 U.S. 535, 550, 18 L.Ed. 403, 4 Wall. 535). Similarly, in *Neel v. First Federal Savings and Loan, Assoc. of Great Falls* (1984), 207 Mont. 376, 386, 675 P.2d 96, 102, we concluded that "[l]aws existing at the date a contract is executed are as much a part of the contract as if set forth therein."

¶21    In addition, this Court has consistently held that the workers' compensation law at the time of an injury governs the claim. *State Fund v. McMillan*, 2001 MT 168, ¶ 6, 306 Mont. 155, ¶ 6, 31 P.3d 347, ¶ 6; *Murer v. State Fund* (1997), 283 Mont. 210, 219, 942 P.2d 69, 74; *Buckman v. Mont. Deaconess Hospital* (1986) 224 Mont. 318, 321, 730 P.2d 380, 382. Stated another way, the workers' compensation statutes in effect when a worker is injured establish the contractual rights and debts of the parties. *Trusty v. Consolidated Freightways* (1984), 210 Mont. 148, 152, 681 P.2d 1085, 1088.

¶22    When the 1987 Montana Legislature substantively revised the Workers' Compensation Act, lawmakers enacted a formal statement of public policy, which declares in pertinent part:

> Montana's workers' compensation and occupational disease insurance systems are intended to be *primarily self-administering*. Claimants should be able to speedily obtain benefits, and employers should be able to provide coverage at reasonably constant rates. *To meet these objectives, the system must be designed to minimize reliance upon lawyers and the courts to obtain benefits and interpret liabilities*.

Section 39-71-105(3), MCA (emphasis added). This stated policy remains in effect today. The record does not establish whether Liberty prepared the agreement with Wiard. The

agreement utilized a "fill-in-the-blank" standardized Form 820 provided by DOLI, which has been in common use to settle workers' compensation claims over past decades.

¶23   When Wiard's industrial injury manifested on August 5, 1992, his employer was insured by Liberty under Compensation Plan Number Two of the Workers' Compensation Act. *See* Montana Code Annotated, Title 39, Chapter 71, Part 22 (1991). Consequently, Wiard's entitlement to future medical benefits stemming from his work-related injury is defined by the 1991 provisions of the Act. The Legislature deemed it appropriate to terminate medical benefits to workers injured on the job when medical benefits are not used for 60 consecutive months. Section 39-71-704(1)(d), MCA (1991). While it is true that the parties to a contract may agree to anything that is not illegal, criminal, or immoral, the medical benefits afforded Wiard under the settlement agreement are nonetheless governed by the law that existed at the time of his injury. The statute governing settlements, § 39-71-741, MCA (1991), contained no provision for closing medical benefits at the time of settlement of an accepted liability claim. Thus, by law, reasonably necessary medical benefits were reserved and payable following the settlement, except as capped by the operation of the 60-month rule.

¶24   Further, the agreement is not inconsistent with the law. It provided that the employer was "enrolled under Compensation Plan No. II of the Montana Workers' Compensation Act" and that the insurer "assumed liability" pursuant to that plan. Therefore, the liability assumed by the insurer under the agreement was that imposed by the Act and nothing more.

9

¶25    We hold that the Workers' Compensation Court correctly interpreted the agreement to incorporate the provisions of the Workers' Compensation Act and correctly applied the limitation on medical benefits enacted by the Legislature at § 39-71-704(1)(d), MCA (1991).

Issue 2

¶26    *Whether Wiard was denied medical benefits without due process of law.*

¶27    Article II, Section 17, of the Montana Constitution provides that, "[n]o person shall be deprived of life, liberty, or property without due process of law." This Court has held that workers' compensation medical benefits are the property of the individual claimant. *Lockhart v. New Hampshire Ins. Co*., 1999 MT 205, ¶ 24, 295 Mont. 467, ¶ 24, 984 P.2d 744, ¶ 24.

¶28    Wiard asserts that the crux of procedural due process is that a person must be afforded notice and opportunity to be heard prior to the deprivation of a property right. He notes that the Legislature recognized the significance of notice by enacting § 39-71-609, MCA (1991), which requires an insurer to give fourteen days written notice to claimants of the termination of compensation benefits. Under the public policy objective of a self-administering workers' compensation system that minimizes reliance upon the legal profession, Wiard argues that it is incumbent upon the insurer to give notice to claimants of their essential rights and obligations. Since Liberty failed to inform Wiard of the existence of the 60-month rule in § 39-71-704(1)(d), MCA (1991), Wiard claims that the insurer is not entitled to raise that statute as a defense.

¶29    Liberty cites *State v. Long* (1985), 216 Mont. 65, 68-69, 700 P.2d 153, 156, for the principle that, unless specifically provided otherwise, citizens' rights articulated in the Montana Constitution proscribe only state action.  Because Article II, Section 17, does not reference private entities, Liberty maintains that the provision does not contemplate that a private right of action would fall within due process requirements.

¶30    Wiard fails to provide any authority to support his argument, as is required under Rule 23(a)(4), M.R.App.P., that Liberty violated his right to procedural due process by failing to notify him of the existence of the 60-month rule.  Settled Montana law establishes that we will not consider an argument for which the litigant has failed to provide support, and thus, we will not consider Wiard's constitutional argument.  *See Johansen v. State, Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24.

¶31    The record shows that the DOLI approved the agreement between Wiard and Liberty, pursuant to § 39-71-741(6), MCA (1991), which states:

> [T]he division has full power, authority, and jurisdiction to allow, approve, or condition compromise settlements for any type of benefits provided for under this chapter or lump-sum payments agreed to by workers and insurers.  All such compromise settlements and lump-sum payments are void without the approval of the department.  Approval by the department must be in writing.  The department shall directly notify a claimant of a department order approving or denying a claimant's compromise or lump-sum payment.

The DOLI order approving the agreement did not notify Wiard, or require the insurer to notify Wiard, that his reserved medical benefits were subject to any condition or limited by the operation of statute.

¶32   The Workers' Compensation Act is a statutory scheme.  However, no statutory provision requires DOLI to notify claimants that the Act governs all aspects of workers' compensation claims and awards, or that, specifically, a 60-month rule in regard to medical benefits is contained in the Act.  The fact that Wiard had no knowledge of the 60-month limitation upon his medical benefits does not alter the operation of the statute in this case.  As the Workers' Compensation Court noted:

> [Wiard's] ignorance of the law was no excuse.  *Donovan v. Graff*, 248 Mont. 21, 25, 808 P.2d 491, 494 (1991); *Rieckhoff v. Woodhull*, 106 Mont. 22, 30, 75 P.2d 56, 58 (1937).  If ignorance of the law were an excuse, laws would be applied willy-nilly depending upon the individual's legal knowledge; the result would be legal chaos and there would be no rule of law at all.

¶33   Wiard availed himself of the mediation process set forth by § 39-71-2401,  MCA (1991), et seq., and trial before the Workers' Compensation Court, pursuant to § 39-71-2905, MCA (1991).   Therefore, we hold that the Workers' Compensation Court correctly concluded, under the arguments here proffered, that Wiard's right to due process was not denied.

Issue 3

¶34   *Whether Liberty should be equitably estopped from asserting § 39-71-704(1)(d), MCA (1991), as a defense.*

¶35   The doctrine of equitable estoppel is grounded in statute and case law.  Section 26-1-601(1), MCA, provides that the following presumption is conclusive:

> (1) the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission,

whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief[.]

¶36 In *Wassberg v. Anaconda Copper Co.* (1985), 215 Mont. 309, 316, 697 P.2d 909, 914

(citing *Lindblom v. Employers' Liability Assurance Corp*. (1930), 88 Mont. 488, 494, 295

P. 1007, 1009), we set forth the essential elements of equitable estoppel:

> 1. There must be conduct–acts, language, or silence–amounting to a representation or a concealment of material fact.
>
> 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him.
>
> 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him.
>
> 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.
>
> 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.
>
> 6. He must in fact act upon it in such a manner as to change his position for the worse;  in other words, he must so act that he would suffer what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

¶37 Wiard argues that Liberty's conduct in denying his 1995 medical claim discouraged him from availing himself of medical benefits to which he was entitled.  But for Liberty's rejection of his claim for an office visit, which Wiard asserts was improper, Wiard testified that he would have made more regular visits to the doctor to monitor his condition, which would have served to extend his medical coverage. Wiard argues that his reliance on

13

Liberty's improper denial of his 1995 office visit claim worked to his ultimate detriment when more than 60 months passed before Wiard's damaged cervical disc ruptured in September 2000.

¶38 We agree with the Workers' Compensation Court's determination that, although Liberty was silent concerning the statutory waiver of medical benefits if unused for 60 consecutive months, Wiard cannot sustain the reliance element of equitable estoppel. First, while Wiard maintains that his claim for the April 25, 1995, office visit with Dr. Dewey was not related to a new industrial injury, and Liberty's denial in error, he did not contest the insurer's denial of benefits through mediation or by petitioning the Workers' Compensation Court for relief. Neither, as the Workers' Compensation Court found, did Wiard present any affirmative evidence herein that Dr. Dewey's assessment was wrong. Liberty's acceptance of Dr. Dewey's opinion does not constitute a misrepresentation by the insurer. Although we do not doubt Wiard's assertion that he relied upon it detrimentally, Liberty's denial in 1995 cannot be considered wrongful for purposes of estopping Liberty from raising the statute as a defense.

¶39 Underlying Wiard's estoppel argument is the premise that, had he been advised about the 60-month period, he would have sought medical care during the period for the purpose of extending his benefits. The Workers' Compensation Court found that "[n]othing that was said or not said by Liberty's adjuster deterred him from seeking medical care during the 60-month period had he needed it," and observed that the right to workers' compensation medical benefits is the right to reasonably necessary care for an injury. However, in order

14

to maintain those benefits, Wiard had the affirmative duty to exercise his medical benefits when he reasonably needed medical attention within the 60-month period. If Wiard did not require reasonably necessary medical attention for his neck injury for more than 60 months after the 1995 office visit, then his failure to obtain medical care cannot constitute reliance. Therefore, we must affirm the trial court.

Issue 4

¶40  *Whether Liberty violated the Unfair Trade Practices Act and the implied covenant of good faith and fair dealing.*

¶41  Wiard argues that the Unfair Trade Practices Act and the implied covenant of good faith and fair dealing placed an obligation upon Liberty to act in good faith to inform Wiard of his rights and obligations under the settlement agreement. The Unfair Trade Practices Act prohibits an insurance company from misrepresenting pertinent facts or insurance policy provisions relating to coverage. Section 33-18-201(1), MCA (1991).[1] Additionally, Wiard cites *Weber v. Blue Cross of Montana* (1982), 196 Mont. 454, 463-64, 643 P.2d 198, 203, in which this Court stated:

> Blue Cross has an obligation to act in good faith with its members. This is especially true because Blue Cross is in a much better bargaining position than those applying for membership in its program.

---

[1]Wiard also notes that the Unfair Trade Practices Act requires an insurer to promptly provide a reasonable explanation of the basis for denial of a claim, § 33-18-201(14), MCA (1991), and argues that Liberty violated this provision by failing to properly advise him of the reasons for the denial of his 1995 claim. However, this issue was raised following summary judgment by Wiard's motion for reconsideration, and the Workers' Compensation Court did not address it. We also decline to consider the argument.

Wiard maintains that because indicia of adhesion characterize the settlement agreement, the insurer had an affirmative duty to inform him of any limitation on his medical benefits. Under both theories, Wiard asserts that a genuine issue of material fact exists regarding whether Liberty improperly concealed the fact that Wiard would waive his medical benefits if he did not use them for 60 months.

¶42   As evidence of improper concealment, Wiard points to the deposition testimony of claims adjuster Loren Hartman, who processed his initial 1992 claim. Hartman acknowledged that he did not inform Wiard of the 60-month rule and acknowledged that Liberty did not have a policy to advise *pro se* claimants of the 60-month rule. Wiard argues that a genuine issue of material fact exists regarding whether Liberty improperly concealed Wiard's rights and limitations under the settlement agreement because the adjuster "knew that Mr. Wiard did not know about the sixty month limitation."

¶43   The Workers' Compensation Court disputed this factual assertion in its order denying Wiard's motion for reconsideration. The court noted that the adjuster did not testify that he knew that Wiard was unaware of the 60-month rule but, in response to a deposition question asking him to "guess" whether Wiard was aware of the rule, had merely replied, "I would guess not." The Workers' Compensation Court concluded this testimony was insufficient to sustain an allegation of concealment of the rule by Hartman, and we agree.

¶44   The Workers' Compensation Court further concluded that even if Liberty's claims adjusters were aware of Wiard's ignorance of the 60-month rule, that knowledge was immaterial. We must agree. As stated herein, Wiard's medical benefits were reserved by

16

the settlement agreement and as a matter of law.  The rights and duties of the parties are imposed by the Act, and the insurer had no affirmative duty thereunder to inform Wiard of the 60-month limitation on the duration of his medical benefits.  We affirm the trial court on this issue.

## CONCLUSION

¶45     We hold that the Workers' Compensation Court was correct as a matter of law to uphold Liberty's denial of Wiard's September 2000 medical benefits claim pursuant to § 39-71-704(1)(d), MCA (1991).  This holding renders it unnecessary to address the fifth issue raise by Wiard, that being whether the court erred by finding that a prior determination that he had attained maximum medical improvement precluded further medical benefits.

¶46     Affirmed.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

17

Justice Jim Rice specially concurring.

¶47     The conclusion we have reached herein is stark.  The parties admitted for purposes of this appeal that the injured worker's back surgery in September of 2000 was a consequence of his 1992 industrial injury, yet application of the statutes releases the insurer from the burden of that necessary expense and casts it upon the injured worker and, if he cannot sustain the burden, upon society as a whole.

¶48     The culmination of legislative policies which remove the legal profession from the process, impose deadlines for receiving medical care, and then fail to notify injured workers of the deadline, is, in my view, unduly harsh and unfair.  It is particularly so when the nature of the injury at issue may require multiple years to fully resolve.  In addition to being harsh, this provision has the unintended effect of punishing injured workers who refrain from seeking medical care until their declining condition forces them to do so, which may then be too late.

¶49     The 60-month provision is still in effect.  *See* § 39-71-704(e), MCA (2003).  I would urge the Legislature to revisit this provision to ensure that necessary medical care arising from an industrial injury is authorized, and that workers, many of whom are now unrepresented, are advised of any deadline affecting their ability to obtain care for a work-related injury.

/S/ JIM RICE


Justice W. William Leaphart joins in the special concurring opinion of Justice Rice.


/S/ W. WILLIAM LEAPHART


18

Justice James C. Nelson specially concurs.

¶50     I concur in our opinion because it correctly applies the law to the facts of this case. In doing so, however, I also join Justice Rice's concurring opinion. Indeed, it is ironic that injured workers, dependent on a "self administering" insurance system that is "designed to minimize reliance upon lawyers and the courts," need lawyers and courts to avoid being sandbagged by statutes and DOLI standard form agreements that are little more than traps for the unwary and unsophisticated.

/S/ JAMES C. NELSON

Justice W. William Leaphart joins in the special concurring opinion of Justice Nelson.

/S/ W. WILLIAM LEAPHART

19