JUSTICE WARNER
specially concurs.
¶26 In my view, another facet of this case must be mentioned. While there is no record concerning Advance’s motion to set aside the default judgment, we know that Plentywood’s counsel had been in communication with Advance and its insurer Travelers prior to and after filing the first complaint and that he knew Advance intended to defend the claim. Also, Plentywood’s counsel knew Advance’s address, yet made no attempt to serve it directly or to inform either Advance or Travelers that Plentywood had filed suit.
¶27 Under similar facts, we have strongly disapproved of the entry of a default judgment. Maulding v. Hardman, 257 Mont. 18, 25-26, 847 P.2d 292, 297 (1993). In Maulding, counsel had been in contact with defendant’s insurer that covered the claim, proceeded at all times with an eye toward collecting from the insurance company once he obtained a judgment for his client, and did not advise the insurer of the application for a default judgment. We noted in Maulding that Rule 3.3 of the Rules of Professional Conduct “requires a lawyer in ex parte proceedings to inform the court of all material facts known by the lawyer whether or not they are adverse.” Maulding, 257 Mont. at 26, 847 P.2d at 298. Similar to Maulding, the record here contains no indication that Plentywood’s counsel disclosed to the District Court that he had been in contact with both Advance and Travelers and knew that they had denied liability. At the July 18, 2005, hearing regarding the default judgment, Plentywood’s counsel informed the District Court that he had sent a copy of the proposed default judgment to Plentywood’s insurer, Austin Mutual. However, nothing in the record suggests that the District Court knew that counsel had *340 also been in communication with Advance and Travelers. What record there is in this case suggests that both Advance and Travelers may have been sandbagged.[1] This Court does not countenance such conduct.
CHIEF JUSTICE GRAY and JUSTICE RICE join in the foregoing concurrence.

 The term “sandbagged,” in the present context derives from the tactic of a poker player to trap another player by checking a strong hand to induce a bet, and then raising once that bet is made. Webster’s Third New International Dictionary, Unabridged 2009 (Philip Babcock Gove, ed., Merriam-Webster, Inc. 2002). In law it has come to mean, inter alia, the practice of unfairly remaining silent concerning an important point in order to lull another party to inaction. See U.S. v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998); State v. Mendoza-Solorio, 33 P.3d 411, 416 (Wash. App. Div. 3 2001); DeShields v. State, 534 A.2d 630, 645 (Del. 1987); Gilbert v. K.T.I., Inc., 765 S.W.2d 289, 295 (Mo. App. W. Dist. 1988); Wiard v. Liberty Northwest Ins. Corp., 2003 MT 295, ¶ 50, 318 Mont. 132, ¶ 50, 79 P.3d 281, ¶ 50 (Nelson, J., concurring).