FILED

03/07/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0738

DA 15-0738

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 45

IN THE MATTER OF:

K.J.R.

A Youth.

APPEAL FROM:     District Court of the Ninth Judicial District,
                 In and For the County of Toole, Cause No. DJ 12-05
                 Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Chief Appellate Defender, James Reavis, Assistant
                Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
                Attorney General, Helena, Montana,

                Merle Raph, Toole County Attorney, Shelby, Montana

                                    Submitted on Briefs:  January 18, 2017

                                              Decided:  March 7, 2017

Filed:

                        _____
                                         Clerk

Justice Dirk M. Sandefur delivered the Opinion of the Court.

¶1      K.J.R. challenges the legality of a Youth Court order that committed him to the Department of Corrections for placement at the Pine Hills Youth Correctional Facility. We affirm.

## ISSUES

¶2      We reframe the issues on appeal as follows:

1. *Did the Youth Court err by revoking the youth's previously imposed youth court commitment and committing him to the Department of Corrections for placement at a state youth correctional facility?*

2. *Did counsel for K.J.R. provide ineffective assistance by failing to object to revocation proceedings in the absence of previously imposed probationary conditions?*

## BACKGROUND

¶3      By petition filed June 20, 2012, the State charged twelve-year-old K.J.R. with seven felony and misdemeanor offenses including theft of a motor vehicle, theft of a .40 caliber handgun, criminal mischief in the shooting of a calf, criminal trespass, and accountability to theft of a motor scooter in Toole County, Montana.  Upon K.J.R.'s admission that he committed "an act which, if committed by an adult, would constitute a criminal act," the Ninth Judicial District Youth Court adjudicated K.J.R. to be a "delinquent youth," as defined by § 41-5-103(11)(a), MCA.

¶4      At the time of the original dispositional hearing on July 12, 2012, K.J.R.'s parents were both incarcerated on drug-related offenses and unavailable to parent him.  The Youth Court committed K.J.R. "to the supervision" of the Youth Court until age

2

eighteen, or sooner released, for placement at a specific therapeutic group home in Billings. The dispositional order further provided that the "Youth Court Officer shall have the ability to find an alternative suitable placement" if the specified placement was "not attainable."

¶5 For reasons not of record on appeal, the supervising juvenile probation officer initially placed the youth at a non-therapeutic group home in Great Falls. Over the next three years, the juvenile probation officer moved K.J.R. in and out of a sequence of juvenile facilities and foster care homes. Between placements, K.J.R. spent considerable time in juvenile detention until his probation officer could secure the next placement.

¶6 K.J.R.'s first placement at the Missouri River Group Home in Great Falls lasted only a few months before the facility requested his removal for disruptive behavior and violations of house rules. The probation officer next placed K.J.R. at the Youth Christian Ranch in Roundup, which lasted two years before the facility requested his removal due to disorderly conduct, truancy, and marijuana use. The next placement at the North Skyline Youth Home in Great Falls ended within a few weeks after K.J.R. fought with other boys and violated house rules.

¶7 Violations of house rules similarly triggered K.J.R.'s removal from his fourth placement at a therapeutic foster care home in Shelby. His juvenile probation officer then arranged for a kinship placement with an aunt in Shelby in anticipation of the return of K.J.R.'s mother upon her completion of a prerelease program in Great Falls.

¶8 On September 8, 2015, based on new allegations that fifteen-year-old K.J.R. had recently been truant, insubordinate at school, involved in an assault, and failed to timely

3

return to Shelby from Great Falls, the State filed a petition to revoke K.J.R.'s Youth Court probation. At the adjudicatory hearing on September 30, 2015, the Youth Court adjudicated the alleged probation violations as true.

¶9 The Youth Court continued the dispositional hearing four times to allow K.J.R.'s counsel time to find an alternative therapeutic placement. At the hearing on October 29, 2015, counsel reported that his efforts to secure placement for K.J.R. failed because K.J.R. lacked an up-to-date psychiatric evaluation. A contemplated out-of-state therapeutic placement required Medicaid funding, which was not available without a current psychiatric evaluation.[1]

¶10 At the close of the dispositional hearing, the Youth Court revoked K.J.R.'s original commitment to the Youth Court for private, out-of-home placement. Pursuant to the recommendations of the juvenile probation officer and the youth placement committee, the Court committed K.J.R. to the supervision of the Montana Department of Corrections (DOC) for placement at the Pine Hills Youth Correctional Facility until age eighteen or sooner released. The Court also ordered K.J.R. to complete a chemical dependency program at Pine Hills.

**STANDARDS OF REVIEW**

¶11 We review a youth court's application and interpretation of the Youth Court Act de novo for correctness. *In re K.J.*, 2010 MT 41, ¶ 13, 355 Mont. 257, 231 P.3d 75

---

[1] Counsel for K.J.R. argued that the Youth Court's options for disposition were impacted by a 2012 neuropsychological evaluation, which indicated the youth suffered from a mental disorder. However, a mental health evaluation completed at the Cascade County Juvenile Detention Center in 2015 disputed the earlier report. The more recent mental health evaluator stated that K.J.R.'s earlier diagnosis of mental disorder had been ruled out by a clinician in 2012.

(citing *In re G.T.M.*, 2009 MT 443, ¶ 9, 354 Mont. 197, 222 P.3d 626). Whether a person has been denied the right to due process is a question of constitutional law and our review is plenary. *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408.

¶12 The standard of review of a youth court's modification of a prior order under § 41-5-1422, MCA, is for an abuse of discretion. *In re C.D.H.*, 2009 MT 8, ¶ 21, 349 Mont. 1, 201 P.3d 126 (citing *Matter of B.L.T.*, 258 Mont. 468, 470, 853 P.2d 1226, 1227 (1993)). The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *C.D.H.*, ¶ 21 (citing *A.S.*, ¶ 24).

## DISCUSSION

¶13 *1. Did the Youth Court err by revoking the youth's previously imposed youth court commitment and committing him to the Department of Corrections for placement at a state youth correctional facility?*

¶14 K.J.R. contends the Youth Court unlawfully revoked his probation and prior Youth Court disposition because his original Youth Court commitment was not subject to any specific court-imposed probationary conditions. Because the court could not legally determine the youth to have violated nonexistent terms of probation, K.J.R. asserts the court's probation revocation and resulting DOC commitment order were unlawful.

¶15 For its part, the State argues on appeal that K.J.R. waived the issue of the validity of the subject orders by failing to timely object below. Inattentive to the original disposition in this matter, the State further attempts to rebrand various detention release conditions imposed by the Youth Court in July and August 2015 as subsequently-imposed conditions of K.J.R.'s underlying probation.

5

¶16 This Court generally will not review an issue not raised below. *In re K.M.G.*, 2010 MT 81, ¶ 19, 356 Mont. 91, 229 P.3d 1227 (citing *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892). The objecting party must first give the trial court the opportunity to address and correct any perceived errors. *K.M.G.*, ¶ 36. As an exception to the general rule, we will review a final disposition alleged to be illegal or in excess of statutory mandates even if the defendant failed to raise the issue in the trial court. *K.M.G.*, ¶ 19 (citing *Kotwicki*, ¶ 8; *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979)).

¶17 Because K.J.R. claims the Youth Court unlawfully revoked his prior disposition and, thus, lacked the subsequent authority to commit him to DOC for placement at Pine Hills, the gravamen of his appeal is a challenge to the legality of his second Youth Court disposition. We conclude the claim qualifies for review on appeal despite the lack of a lower court objection.

¶18 Upon adjudication of a "delinquent youth," the Youth Court Act authorizes various final dispositions in the discretion of the court including, *inter alia*:

(1) placing "the youth on probation" under the continuing jurisdiction of the youth court pursuant to §§ 41-5-1513(1)(a) and -1512(1)(a), MCA;

(2) committing "the youth to the youth court" for placement in a private, out-of-home facility pursuant to §§ 41-5-1513(1)(a) and -1512(1)(c), MCA; or

(3) committing "the youth to the department" for placement in a state youth correctional facility until age 18 or sooner released pursuant to § 41-5-1513(1)(b), MCA.

6

The youth court may impose any authorized disposition following a formal hearing and consideration of a predisposition report or assessment filed and served by a juvenile probation officer. Section 41-5-1511(2) through (4), MCA.

¶19 Because the Youth Court Act does not define "probation," we turn to other parts of the Montana Code to determine the meaning of the term. *See* § 1-2-107, MCA (a word or phrase defined by one part of the code is applicable to the same word or phrase in other parts of the code except where a contrary intention plainly appears). In the context of a juvenile sex crime, the law defines probation as the "supervision of the juvenile by a youth court pursuant to Title 41, chapter 5." Section 45-5-501(3)(b)(ii), MCA. The Interstate Compact on Juveniles defines the term as "any kind of supervision or conditional release of juveniles authorized under the laws of the compacting states." Section 41-6-101, MCA. Title 46 similarly defines the term as "release by the court without imprisonment of a defendant found guilty of a crime . . . subject to supervision by the department of corrections upon direction of the court." Section 46-1-202(21), MCA; *accord* § 46-23-1001(4), MCA. Thus, for purposes of the Act, probation generally means the court-ordered release of a youth, subject to supervision under court-ordered terms and conditions. The youth court has the exclusive authority to impose or modify the terms and conditions of probation. *See* §§ 41-5-103(18), -1422, -1511, -1512(1)(a), (i), -1513(1)(a), MCA (adjudication and disposition of delinquent youth and court authority to modify youth court orders); *compare* § 41-5-1703(1)(c), (2), MCA (juvenile probation officer duty to supervise youth court probationers and enforce probation conditions).

¶20    Upon formal petition and hearing, the court may revoke a youth's previously imposed probation upon a finding that the youth "violated a term of probation."  Section 41-5-1431(1), (2), MCA.  The petition "must state the terms of probation alleged to have been violated and the factual basis" for the alleged violations.  Section 41-5-1431(2), MCA.  Upon adjudication of the violation of "a term of probation, the youth court may make any judgment of disposition that could have been made in the original case."  Section 41-5-1431(3), MCA.

¶21    In contrast, without reference to probation or probation conditions, a commitment to the youth court for private, out-of-home placement references only certain conditions of *placement*.[2]  By its express and limited references to "probation" and "term of probation," the probation revocation procedure specified by § 41-5-1431, MCA, does not apply to a revision or revocation of a commitment for private, out-of-home placement.  *See* §§ 41-5-1431, -1512(1)(a), MCA (probation disposition and probation revocation); *compare* § 41-5-1512(1)(c), MCA (commitment to youth court for private, out-of-home placement).

¶22    Though not technically on probation, a youth committed for private, out-of-home placement under § 41-5-1512(1)(c), MCA, is nonetheless subject to mandatory supervision by the juvenile probation officer.  Section 41-5-1523(2), MCA.  Akin to probation conditions, the youth court may impose terms and conditions of supervision incident to a commitment for private, out-of-home placement under § 41-5-1512(1)(c),

---

[2]    Incorporated by reference to statutory limitations on state youth correctional facility placements.  *See* §§ 41-5-1512(1)(c), -1522, MCA.

8

MCA. *See, e.g.,* § 41-5-1512(1)(i), MCA (discretion to order "further care, treatment, evaluation, or relief" beneficial to the youth and community). As with probation conditions, juvenile probation officers have no authority to impose terms and conditions of supervision under a § 41-5-1512(1)(c), MCA, commitment for private, out-of-home placement. *See* §§ 41-5-1523(2), (3), -1703(1), (2), MCA (probation officer supervision and case management duties related to private, out-of-home placement).

¶23 Though the Act does not mandate a structured procedure for revision or revocation of commitments to the youth court under § 41-5-1512(1)(c), MCA, the Act nonetheless vests the youth court with broad discretion to "modify" youth court orders "at any time." Section 41-5-1422(1), MCA. Commitment to the youth court under § 41-5-1512(1)(c), MCA, and commitment to DOC for placement at a state youth correctional facility under § 41-5-1513(1)(b), MCA, are both dispositions available to the youth court upon the original adjudication of a delinquent youth. Therefore, a youth court has continuing jurisdiction and authority pursuant to § 41-5-1422(1), MCA, to revoke a commitment to the youth court under § 41-5-1512(1)(c), MCA, and then to recommit the youth to DOC for placement at a state youth correctional facility pursuant to § 41-5-1513(1)(b), MCA. Exercise of that discretion necessarily requires non-arbitrary findings of fact and conclusions of law warranting the change of disposition under the relevant statutory criteria that would have governed a DOC commitment in the first instance.

¶24 In this case, without citation to a particular dispositional subsection of § 41-5-1513, MCA, the Youth Court originally committed K.J.R. "to the supervision of the Montana Ninth Judicial District Youth Court" until age of eighteen or "sooner

9

released." If the specified therapeutic group home placement was "not attainable," the court authorized the juvenile probation officer to "find an alternative placement." The court's dispositional order did not reference the term "probation" or impose any probation conditions. In contrast to a probationary disposition under §§ 41-5-1513(1)(a) and -1512(1)(a), MCA, the original disposition in this case was, as a matter of law, a commitment to the youth court for private, out-of-home placement pursuant to §§ 41-5-1513(1)(a) and -1512(1)(c), MCA. Because he was never on probation, K.J.R. was not subject to a probation revocation under § 41-5-1431, MCA.

¶25 Nonetheless, the Youth Court retained broad discretion under § 41-5-1422(1), MCA, to revoke K.J.R.'s original youth court commitment under § 41-5-1512(1)(c), MCA, and then to recommit him to DOC for placement in a youth correctional facility pursuant to § 41-5-1513(1)(b), MCA. Though the parties led it down the wrong procedural path, the court's oral and written findings and conclusions, as well as the underlying record, manifest that the Youth Court and supervising juvenile probation officer afforded K.J.R. every reasonable opportunity to succeed on supervision under his originally imposed court commitment for private, out-of-home placement. The record further shows that the probation officer, statutory youth court placement committee, and ultimately the Youth Court resorted to a state youth correctional facility placement only after K.J.R. demonstrated he was not amenable to supervision in the community over a period of years and multiple alternative placements.

¶26 Though proceeding under the mistaken belief that this case involved a probation disposition subject to probation revocation proceedings under § 41-5-1431, MCA, the

10

Youth Court clearly had continuing discretionary authority under § 41-5-1422(1), MCA, to revoke K.J.R.'s original commitment to the Youth Court and to recommit him to DOC for placement at a state youth correctional facility. Aside from correctly pointing out the mistaken procedural characterization, K.J.R. has made no particularized showing that any of the court's substantive findings of fact or factual considerations were clearly erroneous. K.J.R. similarly has made no showing of prejudice resulting from the mere fact that the court mistakenly characterized the proceeding as a probation revocation proceeding rather than an exercise of its ongoing discretion to modify youth court orders at any time. To the contrary, the record and the court's orders clearly show that the youth received due notice and opportunity to be heard in opposition to the State's revocation petition and that the court made a lawful, non-arbitrary decision based on substantial credible evidence.

¶27 This Court will affirm the lower court when it reaches a legally correct result even if it reached the right result for the wrong reason. *State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646 (citation omitted). Therefore, we hold that the Youth Court acted within its lawful authority without abuse of discretion or factual or legal error when it revoked K.J.R.'s original § 41-5-1512(1)(c), MCA, youth court commitment and recommitted him to DOC for placement at a state youth correctional facility.

¶28 *2. Did counsel for K.J.R. provide ineffective assistance by failing to object to revocation proceedings in the absence of previously imposed probationary conditions?*

¶29 As a matter of Fourteenth Amendment Due Process, a youth has the right to the assistance of counsel during delinquency proceedings when such proceedings may result

11

in commitment to an institution or other curtailment of the youth's freedom. *In re Gault,* 387 U.S. 1, 41, 87 S. Ct. 1428, 1451 (1967). A youth also has a Montana statutory right to counsel in all youth court proceedings. Section 41-5-1413, MCA. The right to counsel necessarily includes the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) (by implication from the Sixth Amendment in adult criminal proceedings); *A.S.*, ¶ 20 (as function of due process in child abuse and neglect proceedings).

¶30 Here, the parties ask the Court to evaluate K.J.R.'s ineffective assistance of counsel claim under the two-part test announced in *Strickland,* which requires the defendant to show that counsel's performance was objectively deficient and resulted in actual prejudice. *State v. Notti*, 2003 MT 296, ¶ 6, 318 Mont. 146, 79 P.3d 289. Based on its presumption of adequate performance, the *Strickland* test imposes a heavy burden on the defendant to show that counsel's performance was deficient. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

¶31 An adult criminal defendant's right to effective assistance of counsel derives from the express federal and Montana constitutional rights to counsel in criminal proceedings. Because a youth court proceeding is a remedial civil proceeding rather than a criminal proceeding, *see* §§ 41-5-102, -103(11)(a), and -106, MCA, a youth court defendant's right to effective assistance of counsel derives from the federal and Montana constitutional rights to due process. *See Gault*, 387 U.S. at 41, 87 S. Ct. at 1451. To date, this Court has adopted no specific criteria for evaluating youth court ineffective assistance of counsel claims.

¶32 While the *Strickland* test continues to be appropriate for adult criminal proceedings, we have previously determined that its highly deferential standard is insufficient to protect the fundamental liberty interests at stake in special civil proceedings that, though analogous to criminal proceedings, involve protective or remedial considerations not present in criminal proceedings. *In re Mental Health of K.G.F.,* 2001 MT 140, ¶¶ 62-65, 306 Mont. 1, 29 P.3d 485 (involuntary mental health commitment proceedings); *In re A.S.*, ¶¶ 23-25 (child abuse and neglect parental rights termination proceedings). In *K.G.F.*, based on pertinent published guidelines,[3] we adopted five non-exclusive evaluation criteria for ineffective assistance of counsel claims in involuntary mental health commitment proceedings. *K.G.F.*, ¶¶ 70-89. In *A.S.*, similarly based on pertinent published guidelines,[4] we adopted two non-exclusive evaluation criteria for ineffective assistance of counsel claims in child abuse and neglect termination proceedings. *A.S.*, ¶¶ 26-28. More demanding than the *Strickland* standard but "more direct" than the *K.G.F.* criteria, the *A.S.* criteria focused on:

> (1)     . . . whether counsel has experience and training in representing parents in [child abuse and neglect proceedings] . . . and whether counsel has a verifiably competent understanding of the statutory and case law involving [child abuse and neglect proceedings including parental rights termination proceedings]; and

> (2)     . . . whether counsel has adequately investigated the case; whether counsel has timely and sufficiently met with the parent and has researched the

---

[3] National Center for State Courts Institute on Mental Disability and the Law, *Guidelines for Involuntary Civil Commitment*; 10 Mental and Physical Disability Law Reporter, no. 5, 409-514 (1986).

[4] National Council of Juvenile and Family Court Judges, *Resource Guidelines: Improving Court Practice in Child Abuse & Neglect Cases*, 22–23 (1995).

applicable law; whether counsel has prepared for the termination hearing by interviewing the State's witnesses and by discovering and reviewing documentary evidence that might be introduced; and whether counsel has demonstrated that he or she possesses trial skills, including making appropriate objections, producing evidence and calling and cross-examining witnesses and experts.

*A.S.*, ¶ 26.

¶33 In contrast to a criminal proceeding, youth court proceedings are special, remedial, civil proceedings that affect the development and fundamental liberty interests of youth. *See* §§ 41-5-102, -103(11)(a), -106, MCA (nature of youth court proceedings). Under Montana law, youth have the same fundamental Montana constitutional rights as adults. Mont. Const., art. II, § 15. Although analogous, youth court proceedings involve special considerations and present special challenges to effective representation not present in adult criminal proceedings.[5] Consequently, we decline to adopt the *Strickland* test to evaluate youth court ineffective assistance of counsel claims. Moreover, while something similar to our *A.S.* standard may ultimately be a good fit, we are not inclined to adopt a particular standard for youth court ineffective assistance of counsel claims in this case because the parties have not raised or briefed the issue and the unique facts of this case are amenable to disposition under any objective standard.

---

[5] Logic and pertinent national and Montana sources similarly indicate that counsel must have specialized knowledge, skills, and experience in the areas of youth court procedure, substantive youth court law, and in communicating with and counselling the youth. In addition to age-related deficiencies and challenges, youth court defendants often present with particular disabilities and traumas. Effective advocacy always requires investigation and preparation of the case. *See, e.g.*, National Juvenile Defender Center, *National Juvenile Defense Standards* (Patricia Puritz, et al., 2012) (standards for best practices in juvenile defense) and Montana Public Defender Commission, *Practice Standards for Counsel Representing Individuals Pursuant to the Montana Public Defender Act* (updated 2012) 55-61 (standards for representation of youth in Montana youth courts).

¶34    K.J.R. asserts that counsel performed deficiently by failing to object to the State's revocation petition on the ground that the youth could not violate probation conditions not imposed by the court. He further asserts counsel's omission prejudiced him by resulting in revocation of his community placement and ultimate commitment to DOC for placement in a state youth correctional facility. K.J.R.'s claim is a record-based claim amenable to review on the district court record.

¶35    The record shows counsel for K.J.R. did not object to the State's incorrectly framed petition. A timely objection may very well have alerted the Youth Court to the correct procedural posture and correspondingly correct characterization of the process and its revocation judgment.

¶36    However, as previously noted, K.J.R. has made no particularized showing that any substantive Youth Court finding of fact or factual consideration was clearly erroneous. K.J.R. has similarly made no showing of any substantial prejudice resulting from the fact that the court mistakenly characterized this matter as a probation revocation matter rather than a consideration of whether to modify K.J.R.'s original Youth Court placement under the court's continuing modification authority pursuant to § 41-5-1422(1), MCA. As previously held, the court acted within its lawful authority without abuse of discretion or factual or legal error when it revoked K.J.R.'s original Youth Court commitment and recommitted him to DOC for placement at a state youth correctional facility. Regardless of the alleged deficient performance, K.J.R. has failed to show that counsel's failure to object to the erroneous characterization of the procedure

would have resulted in a different outcome or otherwise prejudiced K.J.R. in any regard. We hold that K.J.R.'s ineffective assistance of counsel claim is without merit.

**CONCLUSION**

¶37     Regardless of the mistaken characterization of the proceeding as a probation revocation matter, the court acted lawfully without error when it revoked K.J.R.'s original Youth Court commitment and recommitted him to DOC for placement at a state youth correctional facility.  K.J.R.'s claim of ineffective assistance of counsel is without merit.  We affirm.

/S/ DIRK M. SANDEFUR

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE

16