FILED

11/07/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0089

DA 22-0089

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 210

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

H.R.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDJ-2020-23
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Jeff N. Wilson, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Bjorn Boyer, Assistant
Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Josh Nemeth, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:  September 20, 2023

Decided:  November 7, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 H.R. appeals the Judgment and Order and the Order Transferring Jurisdiction to District Court and Supervisory Responsibility to Adult Probation and Parole executed by the First Judicial District Youth Court, Lewis and Clark County, on December 29, 2021. The Judgment and Order (1) transferred jurisdiction from youth court to district court, (2) transferred supervisory responsibility from youth probation services to adult probation services until H.R. reached age 23, (3) committed H.R. to the Department of Corrections (DOC) until age 23 with placement at the Missoula Assessment and Sanction Center (MASC) for sufficient time to complete sex offender treatment, followed by placement in a pre-release center, and (4) required H.R. to register as a Tier 1 sexual offender until age 23.

¶2 We restate the issue on appeal as follows:

*Did the Youth Court exceed its authority under § 41-5-208, MCA, when it imposed a Department of Corrections commitment, added two years of supervision to the disposition, and required H.R. to register as a sex offender?*

¶3 We reverse and remand to the Youth Court for action consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 H.R. is a youth who, at the age of 16, was deemed a delinquent youth by the Youth Court for committing four counts of felony sexual intercourse without consent, the first occurring on April 17, 2020, the other three occurring on April 18, 2020.

¶5 H.R. admitted the offenses, and on January 11, 2021, the Youth Court placed H.R. on probation for two years. The Youth Court also determined H.R. was a Tier 1 sexual

2

offender and did not require him to register as a sexual offender. The Youth Court ordered H.R. to complete sexual offender treatment, abstain from use of drugs and alcohol, remain gainfully employed, not possess pornographic material, not possess a cell phone, and not access any social media sites.

¶6 On May 12, 2021, the State petitioned to revoke H.R.'s probation alleging a myriad of violations. H.R. admitted the violations, and the Youth Court granted the State's petition to revoke. Upon disposition, the Youth Court committed H.R. to the DOC for placement in Pine Hills until age 18 or sooner released with probation extending to age 21. Two months after turning 17, H.R. entered Pine Hills.

¶7 Upon turning 18, H.R. was released from Pine Hills on October 11, 2021. The State then sought to transfer jurisdiction from Youth Court to District Court and to order the supervisory responsibility to transfer from juvenile probation services to adult probation services pursuant to § 41-5-208, MCA. On December 29, 2021, the Youth Court held a transfer hearing pursuant to § 41-5-208, MCA. At the outset of the hearing, the State advised the Youth Court H.R. was waiving his transfer to the District Court but contention remained regarding the State's recommendation. Despite H.R.'s waiver and consent to the requested transfer to District Court and adult supervision, the Youth Court requested testimony of H.R.'s youth probation officer and of adult probation and parole. As such, the State presented testimony from Jonathan Flynn, a deputy juvenile probation officer, and Trevor Newman, an adult probation officer. Jonathan Flynn, H.R.'s youth probation officer, testified about H.R.'s past behavior. He also testified about H.R.'s behaviors that

had caused the State to originally seek the revocation which resulted in H.R.'s placement at Pine Hills. Flynn also testified to H.R.'s lack of meaningful engagement while at Pine Hills and upon his release therefrom. Trevor Newman testified about the DOC's sexual offender treatment program, and his beliefs that it would take three years to complete, and that H.R. would be more likely to succeed in sexual offender treatment in a custodial placement where he would be free from drugs and alcohol.

¶8 At the conclusion of the hearing, the Youth Court transferred jurisdiction to the district court and supervisory responsibility to adult probation. The Youth Court also committed H.R. to the DOC extending his supervision an additional two years until he turned 23 on October 12, 2026, with initial placement at MASC, and added the condition that H.R. register as a Tier 1 sexual offender until he turned 23. H.R. argued against extending his disposition to the age of 23, asserting it should be kept at age 21, as was initially set by the court. H.R. also argued against a DOC commitment, stating that although he may have had issues on youth probation, he understood as an adult now he could not continue to refuse the conditions which were imposed upon him. Finally, as to the sexual offender registration, H.R. argued that requiring sexual offender registration was punitive in nature because he was not required to register before, and he had not committed any additional sexual offenses.

## STANDARD OF REVIEW

¶9 We review a youth court's interpretation and application of the Montana Youth Court Act de novo for correctness. *In re D.A.T.*, 2022 MT 174, ¶ 7, 410 Mont. 1, 517 P.3d

When construing a legislative act, it must be read as a whole, and no term should be isolated from the context of the statute. *Eldorado Coop Canal Co. v. Hoge*, 2016 MT 145, ¶ 18, 383 Mont. 523, 373 P.3d 836. The Legislature's intent is determined from the plain language of the statute. *In re J.J.*, 2018 MT 184, ¶ 13, 392 Mont. 192, 422 P.3d 699. "If the intent can be determined from the plain language of a statute, a court 'may not go further and apply any other means of interpretation.'" *In re J.J.*, ¶ 13 (internal citation omitted).

### DISCUSSION

¶10   *Did the Youth Court exceed its authority under § 41-5-208, MCA, when it imposed a Department of Corrections commitment, added two years of supervision to the disposition, and required H.R. to register as a sex offender?*

¶11   As a preliminary matter, the State argues H.R. did not preserve the issue for direct appeal by objecting to it below. The State alleges H.R. asked for leniency in the extension of the disposition instead of objecting to the Youth Court's new impositions. However, based on the rule in *Lenihan*, the Court may review a final disposition that is alleged to be illegal or in excess of statutory mandates, even when the defendant failed to preserve the issue in the trial court. *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997 (1979). Additionally, this Court has applied the *Lenihan* rule in review of a youth court's disposition. *See In re K.J.R.*, 2017 MT 45, ¶ 16, 386 Mont. 381, 391 P.3d 71 (determining the case qualified for review on appeal despite no objection in the lower court when the youth claimed the Youth Court unlawfully revoked his prior disposition and, thus, lacked authority to commit him to Pine Hills). Here, although H.R. did not specifically object to

5

the Youth Court's use of § 41-5-208, MCA, to revoke his prior disposition during his transfer hearing, he does allege on appeal it was an illegal use of the statute to impose additional disposition requirements or a new disposition during a jurisdiction transfer. Therefore, we conclude the claim qualifies for review on appeal.

¶12     Moving to the merits, H.R. argues § 41-5-208, MCA, only gives the Youth Court authority to transfer jurisdiction over a youth from the Youth Court to the district court and transfer supervisory responsibilities from juvenile probation services to adult probation services. H.R. asserts the statute does not give the Youth Court the authority to impose a new DOC commitment, extend the period of State supervision, nor require the condition of sexual offender registration not contained in H.R.'s prior disposition. H.R. further alleges the Youth Court conducted the transfer hearing as if it were a probation revocation hearing, and by doing so, the court violated his due process rights.

¶13     The State argues the DOC commitment and registration requirement were consistent with ensuring H.R. complied with his original disposition. The State also argues that even if the Youth Court committed error, it was harmless. The State claims that had H.R. merely been taken into custody before the hearing, the Youth Court could have committed H.R. to the DOC under § 41-5-208(5), MCA. Thus, according to the State, the fact it did not take H.R. into custody prior to the hearing only benefited him, and any error committed by the Youth Court was harmless.

¶14     Section 41-5-208, MCA, provides for the transfer of jurisdiction to district court and transfer of supervisory responsibility to adult probation after a youth court's disposition

made pursuant to §§ 41-5-1512 or 41-5-1513. *In re A.D.T.*, 2015 MT 178, ¶ 12, 379 Mont. 452, 351 P.3d 682. The purpose of the transfer is to make sure there is continued compliance with the youth court's disposition after the youth turns 18 years old. *In re A.D.T.*, ¶ 12.

¶15 Specifically, the language of § 41-5-208(1), MCA, states "the court may, on the youth's motion or the motion of the county attorney, transfer jurisdiction to the district court and order the transfer of supervisory responsibility from juvenile probation services to adult probation services" to ensure continued compliance with the court's disposition. Section 41-5-208(2), MCA, requires a hearing on whether the transfer should be made, and § 41-5-208(3), MCA, provides the Youth Court shall transfer the case to district court if the court finds by a preponderance of the evidence that transfer is appropriate.

¶16 Section 41-5-208(4), MCA, provides that if a youth whose case has been transferred to the district court violates conditions of a previously imposed disposition, the district court may impose conditions as provided under §§ 46-18-201 through 46-18-203, only after a hearing. *In re A.D.T.*, ¶ 13. Section 41-5-208(5), MCA, permits the district court to incarcerate a transferred youth who is 18 years old in an adult correctional facility only if the youth was incarcerated for a felony offense at the time of transfer. Finally, § 41-5-208(6), MCA, provides the district court's jurisdiction under this statute terminates when the youth reaches age 25.

¶17 Here, in response to the State's request to transfer, the Youth Court appropriately held a hearing under § 41-5-208, MCA, to consider the transfer of jurisdiction over H.R.

to the district court and the transfer of supervisory responsibilities to adult probation services. Upon conclusion of the transfer hearing, in addition to transferring jurisdiction to the district court and supervisory responsibilities to adult probation services, the Youth Court added two years of state supervision to H.R.'s prior disposition imposing a DOC commitment until H.R. was 23 with placement at MASC for sufficient time to complete required sex offender treatment, followed by placement in a pre-release center,[1] and added a registration requirement not contained in his prior disposition—register as a Tier 1 sexual offender until age 23.

¶18 The plain language of § 41-5-208, MCA, provides authority for a youth court to transfer jurisdiction to a district court, order the transfer of supervisory responsibility from juvenile probation services to adult probation services and, if incarcerated at the time of transfer, permit the continued incarceration of the transferred youth but in an adult correctional facility. The statute does not grant authority to modify an existing disposition or issue a new disposition which, includes adding a DOC commitment for an additional two years. It does not grant the Youth Court authority without pleading and proving violation of a disposition to impose additional conditions, such as sexual offender registration. Further, it does not permit the transfer hearing to be treated as a revocation hearing when no petition for revocation has been brought.

---

[1] Resulting in H.R.'s immediate incarceration in an adult correctional facility, despite the requirements of § 41-5-208(5), MCA, specifically precluding incarceration as H.R. was not incarcerated at the time of the transfer hearing.

8

¶19 Although the State's petition to transfer jurisdiction alleged H.R. violated his prior disposition, it did not allege any specific probation violations as required by § 41-5-1431, MCA.[2] The petition to transfer did not request to add conditions or revoke H.R.'s disposition and impose a new one. The State also did not file a new petition for revocation consistent with requirements of § 41-5-1431, MCA, in conjunction with its transfer request. The Youth Court did not give H.R. notice that it was proceeding on anything other than the transfer issue. As such, it was error for the Youth Court to treat the transfer hearing like a probation revocation hearing.

¶20 The State asserts, however, that even if the Youth Court erred by not following the correct procedure, such error was harmless. We do not agree. Despite that under § 41-5-208, MCA, there was no mechanism for incarcerating H.R. or extending the duration of his supervision, at the conclusion of the hearing, H.R. was incarcerated and his State supervision was extended an additional two years. H.R.'s liberty and privacy rights were substantially harmed such that the District's Court error in treating the transfer hearing as a revocation hearing was not harmless error.

---

[2] Section 41-5-1431, MCA, sets forth the statutory process for accomplishing a youth probation revocation when a youth violates terms of his/her probation. A petition for revocation must be filed stating "the terms of probation alleged to have been violated and the factual basis for the allegations." Section 41-5-1431(2), MCA. The standard of proof is the same used in probation revocation of an adult, and in all other respects, proceedings "are governed by the procedures, rights, and duties applicable to proceedings on petitions alleging that the youth is delinquent or a youth in need of intervention." Section 41-5-1431(3), MCA. As such, the youth court must hold a hearing on the petition for revocation. If the court finds the youth violated a term of probation, the court may revoke the prior disposition and "may make any judgment of disposition that could have been made in the original case." Section 41-5-1431(3), MCA.

9

¶21 As H.R. was not incarcerated at the time of the transfer hearing, under the request to transfer made in this case, anything other than a jurisdictional transfer to district court with transfer of supervisory authority from juvenile probation services to adult probation services was outside the youth court's authority under § 41-5-208, MCA, and must be reversed.

## CONCLUSION

¶22 We find the Youth Court exceeded the bounds of its authority under a § 41-5-208, MCA, transfer because it imposed a new disposition on H.R. in addition to the transfer of jurisdiction and supervision agency. Such a new disposition was not available under § 41-5-208, MCA. Accordingly, we reverse and remand to the Youth Court to amend its Judgment and Order to strike the added DOC commitment, the extended supervision period, and the sexual offender registration requirement.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE