FILED

09/13/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0057

DA 21-0057

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 174

IN THE MATTER OF:

D.A.T.,

     A Youth.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDJ-20-25
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Pete Wood, Attorney at Law, Boise, Idaho

     For Appellee:

        Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Matthew S. Robertson, Deputy
County Attorney, Great Falls, Montana

           Submitted on Briefs:  April 6, 2022

                Decided:  September 13, 2022

Filed:

                    _____
                            Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1     D.A.T. (Youth) appeals from the December 1, 2020, judgment of the Montana Eighth Judicial District Court, Cascade County, accepting and imposing a proposed youth court consent decree disposition, placing him on supervised conditional probation for two years or until sooner released, and accordingly suspending the underlying youth court delinquency proceeding pursuant to § 41-5-1501(1), MCA.  We address the following restated issue:

> *Whether the Youth Court erroneously concluded that the consent decree guilt admission required by § 41-5-1501(2), MCA, constitutes or requires a change of answer under § 41-5-1502(8), MCA, thus effecting a delinquency adjudication?*

We answer affirmatively, reverse the affected December 1, 2020, youth court judgment, and remand for entry of an amended dispositional order clarifying the effect of the Youth's consent decree admission in accordance with § 41-5-1501(1), MCA.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     On April 23, 2020, the State filed in the youth court of the Montana Eighth Judicial District Court a formal delinquent youth petition under §§ 41-5-1401 and -1402, MCA, alleging that, on or about January 1, 2015, the then nine-year-old Youth subjected a six-year-old female to sexual intercourse without consent (SIWC) in violation of §§ 45-5-501(1)(b)(iv) and -503(1), MCA.  Following a formal "not true" answer to the alleged offense under § 41-5-1502(1), MCA, the Youth entered into a proposed pre-adjudication "consent decree" pursuant to § 41-5-1501(1), MCA.  Subject to approval and adoption of the youth court, the proposed consent decree provided for placement of the Youth on supervised probation on specified conditions for a period of two years or until

2

sooner released.  In accordance with § 41-5-1501(1), MCA, the proposed consent decree further expressly provided, *inter alia*, that:

> It is . . . in the best interests of the Youth and the public *to suspend formal proceedings* [on the underlying delinquency petition] and to commence supervision of the Youth under the terms and conditions [specified herein]. . . .  [I]f the Youth . . . [violates any of] the expressed terms and conditions of this Consent Decree, the [State] may, in [its] discretion, *reinstate the petition . . . suspended by the Consent Decree . . .* [and] proceed [thereunder] . . . *as if* this Consent Decree *had never been entered*.

> .   .   .

> [The Youth is] aware that a petition may be filed against [him] and continued [to] its conclusion . . . should [he] violate the terms of this Decree.

(Emphasis added.)  The dispositive provision of the proposed Decree thus ordered that:

> [T]he proceedings upon this petition against this youth [are] suspended and that the conditions and directions of this Consent Decree [are] hereby given full force and effect.  If the Youth violates any of the conditions or directions of this Consent Decree, the [State] may, in [its] discretion, *reinstate the petition* suspended by this Decree *and proceed* against the youth *as if* this Consent Decree *had never been entered*.

(Emphasis added.)  The proposed consent decree was separately signed by the Youth, his parents and counsel, a youth court probation officer, and a deputy county attorney.

¶3      On September 15, 2020, at the ensuing hearing on motion for court approval of the proposed consent decree, the Youth Court ascertained that the Youth "fully intend[ed] to admit" the charged offense "in order to take advantage of [the proposed] consent decree." However, a dispute arose between defense counsel and the State as to the legal effect of the contemplated admission.  Defense counsel asserted that the admission of "guilt" required for a consent decree by § 41-5-1501(2), MCA, did not constitute or require a formal change of answer or plea to the offense charged in the underlying delinquency

3

petition as referenced in § 41-5-1502(8), MCA, and thus did not constitute or effect an admitted delinquency adjudication for purposes of a subsequent probation revocation and disposition anew under §§ 41-5-1431(1), (3), and -1513, MCA, in the event of a subsequent consent decree violation. Analogizing the admission of "guilt" required for a consent decree by § 41-5-1501(2), MCA, and the resulting probationary consent decree disposition under § 41-5-1501(1), MCA, to a "plea of guilty," resulting deferred imposition of sentence, probation revocation on violation of a condition of deferral, and sentencing anew on probation revocation in an adult criminal case,[1] the State vehemently disagreed and contrarily asserted that the required consent decree admission of guilt also constituted or effected a formal change of answer and admitted adjudication of the subject delinquency-petition-charged offense under § 41-5-1502(8), MCA (formal delinquent youth adjudication on "valid admission" to offense charged in underlying delinquency petition). The State thus asserted that a subsequent consent decree violation would subject the Youth to a probation revocation petition under § 41-5-1431(1), MCA, and, upon revocation on an adjudicated consent decree violation, delinquent youth disposition anew under § 41-5-1513, MCA, including potential commitment to the Montana Department of Corrections (DOC) for placement in a youth correctional facility without need for further adjudication of the underlying offense charged in the original delinquency petition, to wit:

---

[1] *See* §§ 45-2-101(49), 46-1-202(7), (11), (15), (21), (25), 46-12-204(1), 46-16-105(1), 46-18-201(1)(a), -203(1), and (7)(a)(iv), MCA (criminal code definition of "offense," code of criminal procedure definitions of "conviction," "judgment," "offense," "probation," and "sentence," criminal plea alternatives, post-arraignment/pre-judgment change of plea, deferred imposition of sentence, probation revocation petition, and sentencing anew on revocation).

4

[I]f the Public Defender's Office is going to take the tact that they do not have to admit guilt and that they can just provide a factual basis to find [the youth] guilty and admit to that factual basis and then suspend these proceedings, the [State] will no longer sign or agree to any consent decree, and we will just take all of these matters to trial . . . [because it does not want to] have to come back a year or two years down the road and then try the case because [the youth] did not actually admit guilt. . . . [I]f that's where we're going with this, then we will just withdraw from the agreement and we will ask the Court to set this matter for trial.

¶4 Following a continuance for supplemental briefing, the matter came on for hearing on November 10, 2020, at which the Youth Court agreed with the State. The Court thus essentially ruled that the Youth had only two options—obtain the benefit of the proposed consent decree by "chang[ing] his plea" on the charged offense "to true" under §§ 41-5-1501(2) and -1502(8), MCA, or stand on his original "not true" answer to the petition charge under § 41-5-1502(1), MCA, and go to an adjudicatory bench or jury trial under § 41-5-1502(2)-(7), MCA. Faced with that apparent, uncontemplated Hobson's choice, defense counsel advised that the Youth would have to change his original answer on the charged offense to "true" in order to avoid losing the benefit of the negotiated probationary consent decree disposition. On November 17, 2020, the Court issued a conforming written order summarily denying the Youth's motion for clarification regarding the effect of his contemplated consent decree admission of guilt under § 41-5-1501(2), MCA.

¶5 At the subsequent December 2020 "change of answer" hearing, defense counsel renewed the Youth's objection to the earlier denial of his motion to enter into a consent decree without a change of answer and admitted delinquency adjudication under § 41-5-1502(8), MCA, as distinct from the admission of guilt required for a consent decree

5

by § 41-5-1501(2), MCA. When the Youth Court did not relent, the Youth admitted to the underlying factual allegations and changed his answer to the charged offense (SIWC) to "true" in accordance with the proposed consent decree. Based on those admissions, the Youth Court accepted and adopted the proposed consent decree and accordingly placed the Youth on supervised probation for a period of two years or until sooner released. The Youth Court later issued a subsequent written order noting that the Youth changed his answer and pled "true" to the charged offense, upon which the court "adopt[ed] and approve[d] the consent decree" and thus "suspended" the proceedings "subject to the terms of the [c]onsent [d]ecree[] pursuant to § 41-5-1501(1)(a), MCA."

¶6 The Youth timely appeals the denial of his motion for approval and imposition of the proposed consent decree without a change of answer and admitted adjudication of delinquency under § 41-5-1502(8), MCA, as distinct from the admission of guilt required for a consent decree by § 41-5-1501(2), MCA. He thus prays for remand with instruction for entry of an amended youth court judgment reflecting that his December 2020 admission(s) and change of answer were merely the admission of guilt required for consent decree approval under § 41-5-1501(2), MCA, and not a formal change of answer, trial waiver, and admitted delinquency adjudication under § 41-5-1502(8), MCA.

**STANDARD OF REVIEW**

¶7 We review youth court interpretations and applications of provisions of the Montana Youth Court Act de novo for correctness. *In re C.L.*, 2021 MT 294, ¶ 13, 406 Mont. 258, 498 P.3d 758 (internal citation omitted). In construing statutory provisions, our role is limited to "simply . . . ascertain[ing] and declar[ing] what" the Legislature has "in terms or

6

in substance contained therein," without "insert[ing] what has been omitted" or "omit[ting] what has been inserted." Section 1-2-101, MCA. To the extent possible, we must effect the manifest intent of the Legislature in accordance with the clear and unambiguous language of its enactments, without resort to other means of construction. *Larson v. State*, 2019 MT 28, ¶ 28, 394 Mont. 167, 434 P.3d 241 (citing *Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499).

¶8 We must do so by first attempting to construe the subject term or language in accordance with the plain meaning of its express language, in context of the statute as a whole, and in furtherance of the manifest purpose of the statutory provision and the larger statutory scheme in which it is included. *Mt. Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 27, 400 Mont. 484, 469 P.3d 136 (citing § 1-2-106, MCA, and *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666); *City of Bozeman v. Lehrer*, 2020 MT 55, ¶ 11, 399 Mont. 166, 459 P.3d 850 (citing *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426, and *S.L.H. v. State Comp. Mut. Ins. Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, 15 P.3d 948); *In re Marriage of McMichael*, 2006 MT 237, ¶ 14, 333 Mont. 517, 143 P.3d 439. When several statutory provisions or particulars are involved or implicated, we must endeavor to construe them in a manner that will give harmonious effect to all. *See* § 1-2-101, MCA.

## DISCUSSION

¶9 *Whether the Youth Court erroneously concluded that the consent decree guilt admission required by § 41-5-1501(2), MCA, constitutes or requires a change of answer under § 41-5-1502(8), MCA, thus effecting a delinquency adjudication?*

¶10 The Youth Court Act, codified at Title 41, chapter 5, MCA, is a comprehensive statutory scheme enacted to "preserve the unity and welfare" of family units when possible, provide for the protection, development, and welfare of youths, and "to prevent and reduce youth delinquency" through a non-retributive, but consequence-driven system that balances the need to provide for the protection, development, and welfare of youths with the need for community safety and protection. Section 41-5-102, MCA. To those ends, the Act broadly provides for two types of youth court proceedings—informal proceedings and dispositions without formal petition and formal proceedings and dispositions upon formal "delinquent youth" and "youth in need of intervention" petitions. *See* §§ 41-5-1205(1) and -1301 through -1304, MCA (informal proceedings)[2]; *compare* §§ 41-5-1205(2) and -1401 through -1513, MCA (formal proceedings).

¶11 Within that statutory framework, a "delinquent youth" proceeding is a civil proceeding on a formal "youth court" petition alleging that the subject "youth," as defined by § 41-5-103(45), MCA ("individual . . . less than 18 years of age"), committed an "offense that . . . would constitute a criminal offense." Sections 41-5-103(12), (45), (49), -1401, and -1402, MCA.[3] *Compare* §§ 45-2-101(49), 46-1-202(7), (11), (15), and

---

[2] *See also* §§ 41-5-103(3), (28), (49), -1701, -1703(1)(a), (c), (e), and -1707, MCA (in re juvenile probation and assessment officer duties and functions).

[3] A "youth in need of intervention" is a "youth" formally "adjudicated" by hearing/trial or "valid admission" under § 41-5-1502, MCA, upon petition filed pursuant to §§ 41-5-1401 and -1402, MCA, to have committed an alcoholic beverage offense or a criminal offense not applicable to adults, or to have engaged in "behavior, including running away from home or habitual truancy, beyond the control of the youth's parents," legal custodian(s), or guardian(s). Section 41-5-103(51), MCA.

(25), MCA (criminal code definition of "offense" and code of criminal procedure definitions of "conviction," "judgment," "offense," and "sentence"). *See also* Title 45, chapters 4-10, MCA (defining common criminal offenses). Upon filing of a formal delinquent youth petition under §§ 41-5-1401 and -1402, MCA, the State must formally serve the petition on the youth, and other interested parties, and the youth court must then promptly conduct an answer hearing at which: (1) the youth has the right to the assistance of counsel; (2) the court must advise the youth of his or her applicable statutory and constitutional trial rights regarding the adjudicatory process under § 41-5-1502, MCA; and (3) the youth must answer *true* or *not true* to each offense alleged in the petition. Sections 41-5-1403(1), (3), -1404(1), (7), -1412(1), -1413, and -1502(1), MCA. Thus, in contrast to a criminal conviction, the objective of a formal youth court delinquency petition is a formal civil "adjudication" of the accused as a "delinquent youth." Sections 41-5-103(12), -1401(1), -1402(1)(a), and -1502, MCA.

¶12 A formal *delinquent youth adjudication* (i.e., an adjudication that the subject youth committed a criminal offense alleged in a formal youth court petition) may occur in only one of two procedural manners—upon a "valid admission" of the accused to the truth of the "allegations of the petition," § 41-5-1502(8), MCA, or upon a contested adjudicatory non-jury or jury trial and resulting finding or verdict, upon "proof beyond a reasonable doubt," that the youth committed the "contested offenses" as alleged in the petition. *See* § 41-5-1502(1)-(7), MCA. In either event, the matter then proceeds to a formal "dispositional hearing" upon which the youth is subject to various statutorily-enumerated "dispositions" in the discretion of the youth court, including supervised "probation,"

9

various specified out-of-home placements or commitments, and commitment to DOC for placement in a youth correctional facility. Sections 41-5-1511(1)-(5), -1512(1), -1513(1)(a), (b), and (e), MCA. In the event of a probationary disposition "incident to [a delinquent youth] adjudication," § 41-5-1502, MCA, the probationary disposition is subject to revocation upon petition and proof of a petition-alleged probation violation. Section 41-5-1431(1)-(2), MCA. Upon a probation violation adjudicated under § 41-5-1431(1)-(2), MCA, the subject youth is then subject to disposition on the underlying delinquent youth adjudication anew at which time the court may impose "any judgment of disposition that" it "could have" imposed upon the original delinquency adjudication. Section 41-5-1431(3), MCA. *See also* § 41-5-1513, MCA (authorized dispositions on formal delinquent youth adjudication under § 41-5-1502, MCA).[4]

¶13 Side by side, the youth court petition, responsive pleading/answering, adjudication, dispositional, and probation revocation processes in formal delinquent youth proceedings are in many respects analogous to the formal charging, pleading, trial, sentencing, and probation revocation processes in felony criminal proceedings. *See* §§ 41-5-103(12), -1401, -1402(1), -1403, -1412, -1413, -1431, -1502, and -1511 through -1513, MCA; *compare* §§ 46-7-101, -102, 46-8-101, 46-11-101(2), -102(1), -110, -201, -401, 46-12-102, -104, -201, -204, -210, -212, 46-13-101, -110, 46-16-103, -104, -105, -110, 46-16-605,

---

[4] The formal petition, adjudication, disposition, and probation revocation processes in formal "youth in need of intervention" proceedings are similar to those in formal "delinquent youth" proceedings except for the more limited dispositional options in "youth in need of intervention" proceedings. *See* §§ 41-5-1401, -1402, -1431, -1511, and -1512, MCA. *Compare* § 41-5-1513, MCA (dispositional options upon formal delinquent youth adjudications).

46-18-111 through -115, -201, and -203, MCA. However, in contrast to adult criminal proceedings commenced and prosecuted to criminal conviction under Title 46, chapters 1-18, MCA, a youth court "delinquent youth" proceeding is a *remedial civil proceeding* which, upon adjudication and disposition, does not result in a criminal conviction or sentence. *See* §§ 41-5-102, -103(9), (12), (19), (49), and -106, MCA; *C.L.*, ¶ 16; *In re K.J.R.*, 2017 MT 45, ¶¶ 31 and 33, 386 Mont. 381, 391 P.3d 71; *In re G.T.M.*, 2009 MT 443, ¶ 15, 354 Mont. 197, 222 P.3d 626 (citing *In re D.W.B. in Cascade Cty. Dist. Ct.*, 2009 MT 355, ¶ 14, 353 Mont. 194, 219 P.3d 1255); *State v. Daniels*, 248 Mont. 343, 348-49, 811 P.2d 1286, 1289 (1991) (youth accused under a formal delinquent youth petition is not a "criminal defendant" but a civil defendant under the pertinent provisions of the Youth Court Act).[5] *Compare* §§ 46-1-103, -202(7), (11), (15), and (25), MCA (code of criminal procedure definitions of criminal "conviction," "judgment," "offense," and

---

[5] Due to the similar deprivations of liberty that may result, accused delinquent youths have various statutory and constitutional due process trial rights and remedies similar to defendants in adult criminal proceedings. *See* §§ 41-5-102(4), -323, -331(1)(a), -1403(6), -1412, -1413, -1414, -1415, -1421, and -1502(2), MCA; *In re K.J.R.*, ¶ 31 (accused delinquent youth right "to effective assistance of counsel derives from the federal and Montana constitutional rights to due process"); *Schall v. Martin*, 467 U.S. 253, 263-81, 104 S. Ct. 2403, 2409-18 (1984) (applying Fourth Amendment probable cause requirement to state juvenile delinquency detention proceedings); *McKeiver v. Pennsylvania*, 403 U.S. 528, 533-34 and 543-51, 91 S. Ct. 1976, 1980-81 and 1985-89 (1971) (Fourteenth Amendment Due Process Clause entitles accused juvenile delinquents to "essentials of due process and fair treatment" attendant to criminal prosecutions but not necessarily every constitutional formality attendant thereto—internal citations omitted); *In re Gault*, 387 U.S. 1, 30, 87 S. Ct. 1428, 1445 (1967) (Fourteenth Amendment Due Process Clause entitles accused delinquent youths to the "essentials of due process and fair treatment" attendant to criminal prosecutions during adjudicatory stage of juvenile delinquency proceedings), *abrogated on other grounds by Allen v. Illinois*, 478 U.S. 364, 372-75, 106 S. Ct. 2988, 2993-95 (1986) (holding that civil proceedings under Illinois Sexually Dangerous Persons Act were not criminal in nature and thus did not trigger Fifth Amendment right against self-incrimination as applicable to the States through Fourteenth Amendment Due Process Clause).

"sentence"). *See also* §§ 41-5-103(10), -206, and -2503, MCA (definition and disposition of "criminally convicted youth" upon district court prosecution of youth in lieu of youth court prosecution). Consequently, even to the extent of their many procedural parallels, formal youth court delinquency proceedings are wholly distinct and independent civil proceedings in regard to which "youth courts" must strictly adhere without reference to or conflation with provisions of Title 46, MCA, except as otherwise specifically provided in the Youth Court Act. *See C.L.*, ¶¶ 16, 23, and 26-27 (holding that youth court erroneously construed and applied Youth Court Act consent judgment procedure by analogy to a criminal court guilty plea and deferred imposition of sentence procedure). *See also, e.g.*, §§ 41-5-323, -347, -1206(1), -1304(1)(e), -1403(6), -1502(4), -1512(1)(k), and -1513(1)(c)-(d), MCA (in re bail availability and procedure, home arrest, manner of investigation, manner of jury trial in lieu of non-jury adjudicatory hearing, and sexual and violent offender registration). Youth courts must construe and apply particular provisions of the Youth Court Act in accordance with their express language and thus "avoid interpretive analogies with . . . adult [criminal] procedures" under Title 46, MCA. *C.L.*, ¶ 23.

¶14 At issue here, a "consent decree" is an optional pre-adjudication youth court disposition available under certain circumstances, in the discretion of the youth court, to a youth who stands accused of being either a "delinquent youth" or "youth in need of intervention" under a formal youth court petition filed pursuant to §§ 41-5-1401 and -1402, MCA, to wit:

12

> [A]fter the filing of a [formal] petition under [§] 41-5-1402 and before the entry of a judgment [thereon], the court may . . . suspend the proceedings and continue the youth under supervision under terms and conditions negotiated with probation services and agreed to by all necessary parties.

Section 41-5-1501(1)(a), MCA. Consent decree dispositions are limited to any or a combination of the dispositions authorized for an informal youth court "consent adjustment," as enumerated in § 41-5-1304, MCA, and/or placement in youth "detention for up to 10 days" at county expense "on a space-available basis." Section 41-5-1501(1)(a)-(b), MCA (referencing § 41-5-1304, MCA). *See also* § 41-5-103(15)(a), (16), (38), and (50), MCA (defining youth court "detention," "detention facility," "secure detention facility," and "youth detention facility"). By omission, however, a consent decree disposition in a delinquent youth proceeding may not include a DOC commitment for placement in a youth "correctional facility," as defined by § 41-5-103(6), MCA. *See* § 41-5-1501(1)(a), MCA (referencing §§ 41-5-1304 and -1501(1)(b), MCA); *compare* § 41-5-1513(1)(b), MCA (authorizing commitment to DOC for "placement in a correctional facility" until age 18 upon delinquent youth adjudication on contested hearing/trial or "valid admission" under § 41-5-1502, MCA). Unlike various other processes in a formal delinquent youth proceeding, the consent decree provided by § 41-5-1501, MCA, is a procedural disposition uniquely available under the Youth Court Act with no adult criminal parallel or analog under Title 46, MCA. *C.L.*, ¶¶ 18 and 23.

¶15 The Act imposes a number of express conditions and limitations on the availability and operation of consent decree dispositions. First, except as otherwise provided by § 41-5-1501, MCA, consent decree "procedures . . . and dispositions . . . must conform to

13

the procedures and dispositions . . . relating to consent adjustments without petition" as "specified in" §§ 41-5-1302 through -1304, MCA.[6] Section 41-5-1501(1), MCA. Second, while the State is not a necessary party to a proposed consent decree, *see* §§ 41-5-1501(1) and -103(31), MCA ("on motion of [youth's] counsel" or *sua sponte*, "court may . . . suspend the proceedings" and dispose of petition-charged offenses "under [the] terms and conditions" of a proposed consent decree "negotiated with probation services and agreed to by all necessary parties"—"'necessary parties' includes the youth and the youth's parents, guardian, custodian, or spouse"), a consent decree is not available to "dispose of a youth's alleged second or subsequent offense" that "would be a felony if committed by an adult," or an alleged "third or subsequent offense" that "would be a misdemeanor if

---

[6] In contrast to a consent decree in a formal delinquency proceeding, a "consent adjustment" is an agreed informal youth court disposition "enter[ed] into" by the juvenile probation/assessment officer with the youth and the youth's parents or legal custodian(s) without a petition and before referral of the matter to the county attorney for formal petition proceedings. Sections 41-5-1201(1), -1204(1), -1205(1), -1301(2), and -1302(1), MCA. As referenced in § 41-5-1501(1), MCA, and pertinent here to delinquent youth consent decrees, the "procedures and dispositions specified" for informal consent adjustments include information establishing "reasonable grounds" that the subject youth "is or appears to be a delinquent youth," "admitted facts . . . within" the youth court jurisdiction, probation/assessment officer belief that an informal consent adjustment "would be in the best interests of the child, the family, and the public," a written consent adjustment signed by the youth and youth's parent/legal custodian(s), consent adjustments not available for disposition of a "second or subsequent offense" under certain circumstances, required youth court judge approval if the consent adjustment involves the "allege[d] commission of a felony" or youth detention, and consent adjustment provides for any of the enumerated dispositions specified in § 41-5-1304, MCA. Sections 41-5-1201(1), -1204(1), -1205(1), -1302(1)-(3), and -1304, MCA. However, despite a subset of shared or similar "procedures and dispositions" made applicable to consent decrees in § 41-5-1501(1), MCA, by cross-reference to §§ 41-5-1302 through -1304, informal pre-petition consent adjustments and formal post-petition consent decrees are "statutorily distinct" youth court dispositions with "statutorily distinct" enforcement procedures. *C.L.*, ¶ 24.

committed by an adult," unless "recommended by the county attorney and accepted by the youth court judge." Section 41-5-1501(7), MCA.

¶16 Third, the youth court may dispose of a formal delinquent youth petition by consent decree only if the youth first "admits guilt" for the subject offense(s) charged in the underlying formal petition. Section 41-5-1501(2), MCA. Fourth, except as otherwise provided in § 41-5-1501(5), MCA (required "dismiss[al] with prejudice" of underlying petition-charged offenses upon "discharge[]" of consent decree supervision "by probation services" or completion of the specified supervision period "without reinstatement of the original petition" under § 41-5-1501(4), MCA), a consent decree disposition merely suspends the underlying proceedings on the formal delinquency petition subject to "reinstatement," if the youth either "fails to fulfill the express[] terms and conditions of the consent decree," or is the subject of a new "delinquent youth" or "youth in need of intervention" petition under §§ 41-5-1401 and -1402, MCA, "prior to discharge" of the youth from supervision "by probation services" or "expiration of the consent decree." Section 41-5-1501(4), MCA.[7] In the event of such "reinstatement," the underlying delinquency proceeding "must" then "continue[] to conclusion as if the consent decree had never been entered." Section 41-5-1501(4), MCA.

¶17 In *C.L.*, an issue strikingly similar to the matter at issue here arose when, at the State's urging, the youth court of the Montana Eighth Judicial District Court denied a

---

[7] Upon occurrence of either of those specified conditions, reinstatement is still "in the discretion of the county attorney in consultation with probation services." Section 41-5-1501(4), MCA.

15

youth's motion to dismiss a State petition under § 41-5-1431(1), MCA, for revocation of the youth's probationary consent decree disposition and then for direct commitment of the youth to DOC for placement at a youth correctional facility pursuant to §§ 41-5-1431(3) and -1513(1)(b), MCA. *C.L.*, ¶¶ 3-7. As here, the State and youth court failed to account for and distinguish the remedy provided by § 41-5-1501(4), MCA, in the event of a consent decree violation—reinstatement of the suspended underlying delinquency petition for prosecution to conclusion in the ordinary course under § 41-5-1502(2)-(8), MCA, as if there had been no consent decree prior to the suspension. *C.L.*, ¶¶ 3-7. As here, the youth court adopted and followed the State's assertion, by analogy to a change of plea, deferred imposition of sentence, probation revocation, and resentencing anew on revocation in an adult criminal case.[8] *C.L.*, ¶¶ 6-12. In support of that theory, the State asserted that the youth's consent decree admission of guilt under § 41-5-1501(2), MCA, constituted or effected a formal adjudication of the offense alleged in the underlying delinquency petition for purposes of § 41-5-1502(8), MCA, thus subjecting the youth to a probation revocation petition under § 41-5-1431(1), MCA, in the event of an adjudicated consent decree violation, then disposition anew under §§ 41-5-1431(3) and -1513, MCA. *C.L.*, ¶¶ 6-12.

¶18    On appeal, however, we noted the "admission of guilt" required by § 41-5-1501(2), MCA, "for the purposes of entering a consent decree is a *separate and different* procedure," with *separate and different effect*, than the *valid admission* "to an offense [charged] in a

---

[8] *See* §§ 46-16-105(1), 46-18-201(1)(a), -203(1), and (7)(a)(iv), MCA (post-arraignment/pre-judgment change of plea, deferred imposition of sentence, probation revocation petition, and sentencing anew on revocation).

16

formal [delinquency] petition" referenced in § 41-5-1502(8), MCA. *C.L.*, ¶ 18 (emphasis

original). Our analysis implicitly recognized that, in an *unsuspended* delinquent youth

proceeding under §§ 41-5-1401 and -1402, MCA, a formal delinquent youth adjudication

can procedurally occur in only one of two ways—upon a finding or verdict at an

adjudicatory trial under § 41-5-1502(2)-(5), MCA, that the youth committed the charged

criminal offense or, alternatively, upon a "valid admission" by the youth under

§ 41-5-1502(8), MCA, to the truth of the petition allegation(s). *See C.L.*, ¶¶ 18 and 22.

We thus recognized that a "valid admission" by the subject youth under § 41-5-1502(8),

MCA, to the truth of the offense(s) alleged in the petition constitutes and effects a waiver

of the youth's statutory right to a bench or jury trial under § 41-5-1502(1)-(5), MCA, and

constitutes or effects a formal delinquent youth adjudication on that offense for purposes

of a formal delinquency disposition under §§ 41-5-1502(8), -1511, and -1513, MCA. *C.L.*,

¶¶ 18 and 22.

¶19 In contrast, we recognized that the *admission of guilt* required by § 41-5-1501(2),

MCA, is merely a requirement for a pre-*adjudication* consent decree, and the attendant

limited dispositions specified in § 41-5-1304, MCA. *See C.L.*, ¶¶ 18 and 25 (noting that,

"upon entering a consent decree" under § 41-5-1501(1)(a), MCA, the "formal proceedings

under the petition are 'suspended' and the youth does not proceed to [a delinquent youth]

adjudication" and that § 41-5-1501(1), MCA, by reference to § 41-5-1304, MCA, does not

provide for DOC commitment for placement in a youth correctional facility as an

authorized consent decree disposition). We recognized that, unlike the "valid admission"

of the truth of the "allegations contained in [the underlying delinquency] petition"

referenced in § 41-5-1502(8), MCA, the *admission of guilt* required for a consent decree by § 41-5-1501(2), MCA, neither constitutes, nor effects, a waiver of the youth's right to an adjudicatory bench or jury trial to contest the petition-alleged offense(s) in the event of reinstatement and resumption of the underlying delinquency proceedings upon an adjudicated consent decree violation under § 41-5-1501(4), MCA. *C.L.*, ¶¶ 18 and 22. *See also* § 45-5-1501(4), MCA (providing for "reinstatement" of suspended petition on violation of consent decree). We thus ultimately held, and reaffirm here today, that: (1) the admission of guilt required for a consent decree by § 41-5-1501(2), MCA, neither constitutes or effects a "valid admission" of the underlying delinquency petition allegations, nor resulting delinquent youth adjudication, under § 41-5-1502(8), MCA; (2) youth courts have no authority to "designate" or adjudicate an accused as a "delinquent youth" based on the admission of guilt required for a consent decree by § 41-5-1501(2), MCA; (3) youth courts have no authority to impose any disposition specified in § 41-5-1513, MCA, upon an adjudicated violation of a consent decree imposed under § 41-5-1501(1), MCA; (4) the "exclusive" procedural remedy "to address alleged violations of a consent decree" is a State motion or petition under § 41-5-1501(4), MCA, for reinstatement of the delinquency proceeding suspended under § 41-5-1501(1), MCA; and (5) the only procedural mechanism or course available to the State upon reinstatement of a suspended delinquency proceeding under § 41-5-1501(4), MCA, is to proceed to a formal delinquency adjudication on the reinstated petition under § 41-5-1502(1)-(8), MCA, as if there had been no consent decree and, only then, formal disposition in the ordinary course under §§ 41-5-1511 and -1513, MCA. *C.L.*, ¶¶ 22 and 25-27. As a result, a youth

18

formally accused of being a "delinquent youth" under §§ 41-5-1401 and -1402, MCA, basically has three procedural options absent a subsequent dismissal of the petition: (1) enter into a pre-adjudication consent decree under § 41-5-1501, MCA, thereby avoiding a formal delinquency adjudication and potential commitment for placement in a youth correctional facility; (2) contest the petition-alleged offense(s) at bench or jury trial under § 41-5-1502(1)-(5), MCA, thus risking a formal delinquency adjudication and the full range of dispositions enumerated in § 41-5-1513, MCA; or (3) make a "valid admission" to the commission of the offense(s) alleged in the underlying delinquency petition, thus risking a formal delinquency adjudication and the full range of dispositions enumerated in § 41-5-1513, MCA.[9] We therefore ultimately held in *C.L.* that the youth court erroneously denied the youth's motion to dismiss the State's petition under § 41-5-1431(1), MCA, for revocation of the consent decree disposition and direct commitment to DOC for placement in a youth correctional facility. *C.L.*, ¶ 27.

¶20 Here, the State concedes on appeal that the admission of guilt required for a consent decree by § 41-5-1501(2), MCA, is not, and does not necessarily require, a "valid admission" of the petition allegations, and thus does not constitute or effect an admitted delinquency adjudication, as referenced in § 41-5-1502(8), MCA. It nonetheless asserts,

---

[9] Without further comment, we are aware that, in practice, the parties often attempt to mitigate the dispositional risk attendant with this third option through plea agreements, a practice neither expressly authorized, nor expressly precluded, under the Act. *See, e.g.*, *In re J.A.*, 2011 MT 132, ¶¶ 3-9, 361 Mont. 16, 255 P.3d 150; *In re K.J.*, 2010 MT 41, ¶¶ 5-12, 355 Mont. 257, 231 P.3d 75; *In re R.L.S.*, 1999 MT 34, ¶¶ 3-4, 293 Mont. 288, 977 P.2d 967. *See similarly* § 46-12-211, MCA (adult criminal court plea agreements).

19

however, that the District Court still did not err because nothing in § 41-5-1501(1)-(2), MCA, necessarily precludes the parties from negotiating a consent decree under which the admission of guilt required by § 41-5-1501(2), MCA, also involves or constitutes a "valid admission" to the delinquency petition allegations as referenced in § 41-5-1502(8), MCA. The State's reasoning is fatally flawed, however, in two significant regards. First, the record clearly manifests no such agreement here. The whole point of the Youth's initial and continuing objection below was that no such agreement existed and that, based on the case-specific terms and statutory nature of the subject consent decree actually negotiated, he merely agreed to the more limited admission of guilt required for the consent decree by § 41-5-1501(1)-(2), MCA, rather than the broader "valid admission" and resulting admitted adjudication of delinquency referenced in § 41-5-1502(8), MCA. Nor do the express terms of the proposed decree manifest any such agreement. Second, even if, *arguendo*, the terms and circumstances here could reasonably be viewed as the type of agreement contemplated by the State, any such agreement would not be a consent agreement as defined by § 41-5-1501, MCA, because it would lack the beneficial attributes of a consent decree provided by § 41-5-1501(1) and (4), MCA—stipulated disposition of the case without a delinquency adjudication and, in the event of a subsequent adjudicated consent decree violation, return to the pre-decree procedural status quo with the youth subject to delinquency disposition under § 41-5-1513, MCA, only upon a subsequent adjudication of delinquency on trial or "valid admission" in the ordinary course under § 41-5-1502, MCA. In substantive essence, the agreement contemplated by the State would simply be a plea agreement—an agreement for the youth to make a "valid admission" to the delinquency

20

petition allegations, and thus an admitted delinquency adjudication as contemplated in § 41-5-1502(8), MCA, in return for a stipulated probationary disposition negotiated under § 41-5-1513, MCA. *See similarly* § 46-12-211, MCA (adult criminal court plea agreements). In the event of a violation of the resulting probationary terms or conditions imposed, the youth would then be subject to a revocation of probation under § 41-5-1431, MCA, and then disposition anew under §§ 41-5-1431(3) and -1513, MCA. Again, however, the express terms of the consent decree at issue, the conforming enabling provisions of § 41-5-1501(1), MCA, the nature of the Youth's immediate motion for clarification upon presentation of the proposed decree to the court, and the Youth Court's express findings upon approval and imposition of the consent decree clearly manifest that the subject agreement and resulting disposition imposed was a consent decree disposition under § 41-5-1501(1)-(2), MCA, rather than a plea agreement under § 41-5-1502(8), MCA.

¶21 Here and below, the State contends that interpretation of the admission of guilt required for a consent decree by § 41-5-1501(2), MCA, as distinct and something less than the "valid admission" of the underlying petition allegations, and thus resulting admitted delinquency adjudication, under § 41-5-1502(8), MCA, will thwart the ameliorative purposes of a consent decree because the State will then have no incentive to "negotiate" or "sign or agree to any consent decree" that does not involve and effect a waiver of the youth's right to an adjudicatory trial on the underlying delinquency petition allegations, thereby allowing the State to move directly to disposition anew under §§ 41-5-1431(3) and -1513, MCA, in the event of a subsequent revocation of the probationary consent decree

21

disposition upon an adjudicated violation thereof.[10]   Again, the State's reasoning is fundamentally flawed in several regards.   First, as a threshold matter of statutory construction, *supra*, pre-adjudication consent decree dispositions under § 41-5-1501, MCA, and any post-adjudication probationary disposition imposed pursuant to a plea agreement under §§ 41-5-1502(8) and -1513(1)(a), MCA, are expressly separate and distinct dispositional options available in formal youth court delinquency proceedings under the Youth Court Act.   Second, contrary to the apparent ongoing practice in the Montana Eighth Judicial District based an on erroneously conflated analogy of youth court consent decrees to adult criminal court plea agreement dispositions, the State is not always a necessary party to a youth court consent decree.   As a threshold matter of law, youth court consent decrees are an available dispositional option in formal delinquency proceedings "on motion of counsel for the youth or . . . the court's own motion . . . under terms and conditions negotiated with [youth court] probation services and agreed to by all necessary parties."   Section 41-5-1501(1), MCA.[11]   As referenced in § 41-5-1501(1), MCA, the term

---

[10] Indeed, the State's use of this tactic as leverage is amply demonstrated by the record in this case, where the State's representation that it would "withdraw" from the consent decree without a waiver of trial rights prompted defense counsel, complaining of "hardball" tactics, to attempt to back away from his argument against a trial waiver to protect his client's interest in entering into a consent decree.  Before the Youth Court, the State represented that it would make it a matter of policy to refuse to "sign or agree to any consent decree" going forward if the court ruled against it on the matter.

[11] As referenced in § 41-5-1501(1), MCA, "probation services" means the assigned youth court probation officer.  *See* §§ 41-5-103(49), -1701, -1703(1)(a), (c), and (e), MCA ("youth court" definition and juvenile probation officer duties and functions); *see also* §§ 41-5-208(1) and -1605(3), MCA (referencing "youth court's juvenile probation services" distinct from DOC "adult probation services" and officers).

"all necessary parties" "includes the youth and the youth's parents, guardian, custodian, or spouse." Section 41-5-103(31), MCA ("necessary parties" definition). Thus, the State, as distinct from the youth court juvenile probation officer, is generally not a necessary party to youth court consent decrees. *See* §§ 41-5-103(3), (31), (49), and -1501(1), MCA; *see also* § 41-5-1501(3), MCA (court "shall proceed to findings, adjudication, and disposition of the case" "[i]f the youth or the youth's counsel objects to a [proposed] consent decree").[12] While the State may of course object to court approval and imposition of a proposed consent decree, State consent is required only for a consent decree disposing of an alleged offense that would be the subject youth's "second or subsequent offense" defined as a felony or "third or subsequent offense" defined as a misdemeanor. Section 41-5-1501(7), MCA.

¶22 Third, contrary to the State's reasoning, the beneficial purpose of a youth court consent decree is *not* to provide a streamlined means by which the State may proceed directly to formal disposition anew under §§ 41-5-1431(3) and -1513, MCA, in the event of an adjudicated violation of a consent decree. To the contrary, as a less impactful alternative to a permanent and irreversible adjudication of delinquency with direct potential for out-of-home commitment in a state youth correctional facility, the beneficial attributes and effects of a youth court consent decree are: (1) pre-adjudication suspension of formal

---

[12] The State conceded as much below, where it argued that "the prosecutor is not a necessary party to the Consent Decree," "it is an agreement between the Youth and the Court to suspend formal proceedings after the youth 'admits guilt' for an offense in the youth court petition filed by the State."

delinquency proceedings for supervised probation conditioned on youth compliance with case-specific terms and conditions; (2) preservation of the youth's right, as necessary, to later contest the delinquency petition allegations upon bench or jury trial; (3) incentivized dismissal with prejudice of the underlying delinquency petition without a formal delinquency adjudication upon youth compliance with the consent decree terms and conditions; and (4) in the event of an adjudicated violation of a consent decree term or condition, disincentivized reinstatement and resumption of prosecution of the underlying petition to a delinquent youth adjudication and disposition anew under §§ 41-5-1502 and -1513, MCA, with potential for commitment and placement in a state youth correctional facility. *See* §§ 41-5-1501(1), (2), (4), (5), -1502, and -1513, MCA; *C.L.*, ¶ 19 (citing § 41-5-1501(4), MCA). *See also* § 41-5-102, MCA (stated non-retributive consequence imposition, youth welfare, family preservation, youth delinquency prevention and preservation, and public safety and protection purposes of the Youth Court Act); *In re S.G.-H.M.*, 2021 MT 176, ¶¶ 19-20, 404 Mont. 531, 490 P.3d 1248 (noting Youth Court Act reflection of youthful offenders' diminished culpability and heightened potential for reform, societal interest in enabling members of the next generation to "reach their full potential," and that Act "[e]ssentially . . . provides appropriate responses to youthful misdeeds more reflective of transient immaturity than irreparable corruption, without unnecessary embroilment with a punitive system that will tarnish the youth's lifetime potential"—internal punctuation and citations omitted). The State's declared displeasure with being unable to bypass a formal delinquency adjudication in order to proceed directly to disposition anew under § 41-5-1513, MCA, in the event of a consent decree violation

24

thus manifests a fundamental misapprehension of the expressly intended beneficial purposes of consent decrees as one of the unique remedial provisions provided by the Youth Court Act. We hold that the Youth Court erroneously construed the admission of guilt required for a consent decree by § 41-5-1501(2), MCA, as requiring or constituting a "valid admission" to the underlying delinquency petition allegations, and thus an admitted delinquency adjudication, under § 41-5-1502(8), MCA. The Youth's resulting court-compelled "True" answer at the subsequent "change of answer" hearing on December 1, 2020, and as noted in the court's subsequent written judgment filed later that day, was not a "valid admission" under § 41-5-1502(8), MCA, of the Youth's alleged commission of the subject offense (SIWC) as alleged in the underlying delinquent youth petition.

**CONCLUSION**

¶23 We hold that the Youth Court erroneously construed the admission of guilt required for a consent decree by § 41-5-1501(2), MCA, as requiring or constituting a "valid admission" to the underlying delinquency petition allegation(s), and thus an admitted delinquency adjudication under § 41-5-1502(8), MCA. We further hold, in turn, that the Youth's resulting court-compelled "True" answer at the subsequent "change of answer" hearing on December 1, 2020, and as noted in the court's subsequent written judgment filed later that day, was not a "valid admission" under § 41-5-1502(8), MCA, of the Youth's alleged commission of the subject offense (SIWC). The Youth Court's December 1, 2020, judgment entitled "Order-Consent Decree" is therefore hereby reversed and stricken. This matter is further hereby remanded for entry of an amended judgment approving and

imposing the subject consent decree and suspending any further proceeding on the underlying delinquency petition pursuant to § 41-5-1501(1), MCA, but finding and concluding that the Youth's December 1, 2020, hearing admission(s) was/were no more than the admission of guilt and responsibility required by § 41-5-1501(2), MCA, without waiver of his adjudicatory hearing/trial rights under § 41-5-1502, MCA, in the event of a subsequent reinstatement of the underlying delinquency petition proceedings pursuant to § 41-5-1501(4), MCA.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON